**E. H. O'DOWD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10483.**

Court of Civil Appeals of Texas.

Austin.

June 19, 1957.

**Rehearing Denied July 3, 1957.**

242

M. M. O'Dowd, Waco, F. L. Kuykendall, Austin, for appellant.

Tom Moore, Jr., W. C. Haley, Waco, John R. Grace, Austin, for appellee.

GRAY, Justice.

This is a disbarment proceeding filed against appellant, an attorney at law.

A jury trial was had and sixteen special issues were submitted each of which in-

quired as to a separate act of misconduct alleged to have been committed by appellant. Each issue was answered that appellant committed the act inquired about. On these findings the trial court rendered judgment

> "that E. H. O'Dowd be, and he is hereby disbarred as an attorney at law in accordance with the rules of the State Bar of Texas and that he shall hereafter exercise none of the privileges and prerogatives of the office of attorney at law, all of which shall be subject to re-instatement as provided by the Rules of the State Bar of Texas."

Appellant timely filed his motion for new trial and, among other things, alleged jury misconduct. A hearing was had on the alleged jury misconduct and the motion for new trial was in all respects overruled.

Appellant prosecuted an appeal to the Court of Civil Appeals for the 10th District at Waco (later referred to as the Waco Court). The cause has been transferred to this Court.

Appellant presents sixty-two points. These may be generally grouped. Appellant complains that the trial court erred in overruling: 1–21 his plea to the jurisdiction, plea in abatement and special exceptions; 22 and 23, his motion for instructed verdict; 24–36, 61 and 62 his request for instructed verdict as to specific acts of alleged misconduct; 37 his objection to appellee reading to the jury jurisdictional allegations contained in its petition; 38–53 his objection that the evidence is insufficient to support the jury's answers to certain issues; 54–57 his motion for a new trial because of jury misconduct, and 58–60 complain that the judgment assesses an excessive punishment.

It appears that the charges against appellant were begun, heard and filed in the district court by the Grievance Committee in keeping with the provisions of Art. 12 of the State Bar Rules, Vernon's Ann.Civ.St. following Article 320a–1. It is not clear what the nature of the action taken by the committee prior to its last hearing actually was but its last hearing was not kept private. Appellant had notice of this meeting but did not appear. The filing of a formal complaint in the district court followed this meeting. Section 12 of Art. 12 supra in part provides:

> " * * * The name of the accused member and the proceedings shall be kept private, so far as is consistent with development of the facts. * * * "

This section in its entirety vests the committee with discretion as to the manner of conducting the hearing.

■ Appellant complained that the petition did not allege a legally constituted grievance committee because it was not alleged who appointed the named members and because some of such members were not legally qualified to serve. Section 4 of Art. 12 supra provides for the appointment of the members of the committee and for the purposes of the petition the allegations that "the duly and legally appointed committee" consisting of named persons together with the allegation that the suit was brought "under and by virtue of the authority of the Rules of the State Bar of Texas, as amended," was sufficient to allege authority to bring the suit in the absence of a verified denial. Rule 93, Texas Rules of Civil Procedure. The qualifications of the members of the committee presented an issue of fact. As shown by appellant this issue was heard and determined by the trial court. This determination was adverse to appellant's contention.

The plea to jurisdiction and plea in abatement were properly overruled.

With the exception of two all of appellant's special exceptions were overruled.

Appellee's petition alleged that appellant obtained professional employment with the aid of runners. Sec. 25 of Art. 13, Canon of Ethics of the State Bar, condemns the employment of "agents of runners" for the

purpose of securing professional employment.

Sec. 7 of Art. 12 supra distinguishes "Complaint" and "Formal complaint," the latter being the pleading by which action is instituted by a committee in district court. Sec. 24 of that article provides the requisites of a formal complaint. The procedure for the committee is set out in the Act and it would be immaterial whether the complaint against appellant was filed on a motion or otherwise, there being no such requirement provided.

It was alleged that at all times material and mentioned appellant and M. M. O'Dowd carried on the practice of law as a partnership with offices in Waco. No issue was submitted as to any act involving any alleged partnership. In any event appellant does not suggest how he might have been harmed by a complained of allegation of partnership. We think the allegation of partnership was sufficient. 33 Tex.Jur. p. 450, Sec. 34. Moreover there was no sworn denial of the partnership as alleged. Sec. (f) of Rule 93, supra.

■ Appellant does not point out any allegations in appellee's petition that are subject to the provisions of Sec. 10 of Art. 12 supra. This section provides that except when disbarment is compulsory an attorney shall not be disbarred, reprimanded or suspended for misconduct occurring more than four years prior to the filing of a complaint with the grievance committee, but such limitation shall not run if fraud or concealment is involved until such fraud or concealment is or should have been discovered by reasonable diligence. However if the attorney is found guilty of misconduct then after the close of the trial the acts barred by limitation may be considered in determining the punishment to be assessed. In the proceedings before us disbarment was not compulsory (Sec. 9) and it is not alleged that fraud or concealment was not discovered within four years prior to the filing of the complaint. In this state of the record evidence of any misconduct occurring more than four

years prior to the filing of the complaint would not be admissible at the trial, but after the close of the trial if appellant is found guilty of misconduct then such evidence if there is any, may be introduced for consideration in determining the punishment to be decreed.

■ Appellee alleged that appellant obtained professional employment through runners and that he had "a definite plan, system and established practice, personally and through runners whose names are not known * * * solicited professional employment of numerous and divers persons * * *." The names of the persons from whom such employment was so obtained and the attending circumstances being alleged together with dates, as also were the names, circumstances and dates of the personal acts of appellant alleged. The pleading was not subject to appellant's objection that the same is mere conclusions, indefinite and not sufficient to apprise him of the meaning. Sec. 25 of Art. 13, Canons of Ethics, State Bar Rules, condemns employing "agents or runners" for the purpose of obtaining professional employment by attorneys. A reading of appellee's petition reveals the circumstances under which appellant obtained employment through "runners" and is sufficient to apprise him of the acts charged against him.

■ By a bill of exception appellant complains that jurisdictional facts alleged in appellee's petition were read to the jury. The bill as qualified by the trial court does not show such facts were read to the jury. The facts were alleged by appellee "For the purpose, only, of showing jurisdiction * * *." Such facts should not be read to the jury and the record before us does not show they were so read.

■ The evidence as to the facts relative to the issues submitted to the jury was sharply conflicting. Appellant and his witnesses denied the commission of the acts of misconduct inquired about and their testimony was contradicted by witnesses for ap-

pellee. In this state of the record an instructed verdict would not have been authorized.

The transcript and statement of facts (trial on the merits only) were filed, and thereafter appellant filed his motion requesting leave to complete the statement of facts. This motion was to the effect that the statement of facts as filed did not contain the testimony of named witnesses including the witnesses who testified at the hearing on appellant's motion for new trial. Appellant prayed: "* * * that he be permitted to amend the statement of facts in accordance with Rule 428 of the Rules of Civil Procedure to include such additional evidence as was heard by the trial Court."

On August 28, 1956, the Waco Court entered its order granting appellant leave to amend the statement of facts. On August 31, 1956, appellant filed in the trial court and in the Waco Court a volume designated "Testimony on Motion for New Trial." The clerk of the Waco Court marked the same "Received but not filed August 31, 1956." The volume was certified by the official court reporter but was not approved by the trial court or by attorneys for appellee. The volume bears the following: "Filed in Court of Civil Appeals August 28, 1956 Ruth Sapp, Clerk Tenth District." The clerk of the Waco Court has certified that the file mark of August 28, 1956, was placed upon the volume "upon instructions from the court." Apparently this instruction was on October 23, 1956. On November 7, 1956, appellee filed a motion to strike from the record the above volume because the same was not approved by the trial judge or by appellee. This motion was not disposed of by the Waco Court and it is urged here.

There is no complaint to the volume because of inaccuracies, omissions or other material matters.

After submission of this cause in this Court we directed appellant to secure approval of the volume by the trial court, or by appellee or to show cause why such approval could not be obtained. Attorneys for appellee have now approved the same subject to their contention that:

"Appellant contends that the recording appearing at pages 13 and 14 can be considered on the grounds that same constitute an impeachment as well as to refresh the memory of Juror Montgomery.

"Appellee contends that the recording is not admissible for any purpose; and further contends that the entire record of the testimony on motion for new trial was filed too late to be considered, & that a late filing can not be waived."

As will later appear we make no reference to the purported recording of a conversation with the juror Montgomery.

■ The hearing on and the disposition of appellant's motion for new trial was a part of the trial of this cause and a complete statement of facts necessarily includes the facts heard at that hearing. Stephenson v. Nichols, Tex.Com.App., 286 S.W. 197.

■ Appellee's motion to strike was not filed within thirty days after the volume was received by the clerk of the Waco Court but it was filed within thirty days after the order directing the clerk to file it. In any event the failure to have the volume approved was an informality in the manner of bringing the case into the Court of Civil Appeals within the meaning of Rule 404, Texas Rules of Civil Procedure, which can be waived. Pacific Fire Ins. Co. v. Smith, 145 Tex. 482, 199 S.W.2d 486, 487, wherein the court said:

"The waiver thus enforced relates only to the lack of approval of the statement of facts. It has nothing to do with inaccuracies therein, or omissions therefrom, of anything material to the rights of the parties. Under our rules and decisions ample opportunity is provided for the correction of the statement of facts subsequent to the thirty-day period mentioned in Rule 404 where

it appears that the same is not properly prepared or some material portion has been omitted. Rules 428, 429; Smirl v. Globe Laboratories, 144 Tex. 41, 188 S.W.2d 676; Barron v. James, 145 Tex. 283, 198 S.W.2d 256; Harris v. Stark, 101 Tex. 587, 110 S.W. 737; Boggess v. Harris, 90 Tex. 476, 39 S.W. 565."

The holding supra was expressly approved in Punch v. Gerlach, 153 Tex. 39, 263 S.W.2d 770.

In Smirl v. Globe Laboratories, 144 Tex. 41, 188 S.W.2d 676, 678, the court considered the failure of the district clerk to give notice to appellee of the filing of an affidavit in lieu of an appeal bond under Rule 355, Texas Rules of Civil Procedure. The object of the rules of civil procedure was discussed and the court said:

"If possible, the court should give appellant an opportunity to establish his right to appeal in order that the case may be disposed of on its merits. The object of the new rules is 'to obtain a just, fair, equitable and impartial adjudication of the rights of litigants', Rule 1, and where this can be done without doing violence to the rules or injustice to the rights of the parties, it is the duty of the court to do so. In Texas Employers' Ins. Ass'n v. Evans, 117 Tex. 113, 123, 298 S.W. 516, 520, this Court said: 'The office of a rule of procedure is to facilitate, rather than hinder, a speedy and final determination of all law suits in that way which will secure to litigants their substantial rights and to promote the peace and good order of the state.'

"This Court has always held that where a practice is established by a rule of court it is competent for the court so to adapt its exercise as to prevent any particular oppression and to make it yield to the particular circumstances of the case. In the case of Stephens v. Herron, 99 Tex. 63, 67, 87 S.W. 326, 328, this Court said: 'But our decisions distinguish rules of the court from statutory rules, and hold that the former, unlike the latter, are not inflexible. * * *'"

We do not know the reason for the order of October 23, 1956, of the Waco Court but more than thirty days had elapsed since August 31, 1956, the day that the volume was tendered for filing, and that court may have concluded appellee had waived objections to the volume. In any event Rules 428 and 429, Texas Rules of Civil Procedure, provide remedies for the correction for the omission of the approval of the statement of facts and authorize, if they do not direct, the action taken by this Court supra.

The alleged jury misconduct presents a substantial right, a review of which would be denied appellant if the volume in question should be stricken. We overrule appellee's motion to strike. We also hold that the question of its late filing as contended by appellee is not presented.

Appellant says that material jury misconduct is shown because the jury received additional law from one of the jurors and because the jury received evidence from jurors as to the truth and veracity of the witnesses Hemphill and Berkman.

Following each of the sixteen issues submitted there was an instruction: "Answer 'Yes' or 'No.'" Each issue was answered "Yes."

Subpoenas were issued for all of the jurors. Three were ill and did not appear and five testified at the hearing.

The motion for new trial was overruled by the trial court without fact findings. If there is a conflict in the testimony of the jurors as to whether the alleged misconduct did or did not occur and whether it occurred prior to or after the verdict was reached then the action of the trial court must be sustained. The credibility of the witnesses and the weight to be given their testimony were matters resting within the sound discretion of the trial court. Price v. Biscoe, 141 Tex. 159, 170

S.W.2d 729. On the other hand if there is no conflict in the evidence as to whether the misconduct did or did not occur and the evidence shows it did occur it then becomes a question of law whether injury resulted. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

Juror Wood testified that during the deliberations he was of the opinion that some of the issues should be answered "No" and that someone said all the issues had to be answered "Yes" or all answered "No." His testimony in part is:

"Q. I'll ask you, Mr. Wood, after the jury had deliberated and discussed the evidence and the issues in the Court's main charge, what are the facts with reference to whether there was a statement made to the jury that those issues had to be answered all 'yes' or 'no?' A. During the discussion of how they were to be answered, that's what I understood.

"Q. Do you believe that? A. I believed it or I wouldn't have answered them all that way."

He further said that if he had not believed the statement:

"A. I would have answered some of the questions 'no.' I would have answered some of them 'yes.' "

On cross-examination this juror testified that at first he answered all issues "no" and testified further:

"Q. Mr. Wood, do I understand your testimony to be that some juror, whose name you do not know, said that all the issues had to be answered 'yes' or 'no?' Is that what you said? A. I understood that's what was said, yes, sir."

Juror George, the foreman, testified:

"Q. Did you or not hear anyone tell Mr. Hallie Wood that all of the issues had to be answered one way or the other? A. No, that was never mentioned that they had to answer one way or the other.

"Q. In other words, you understood, did you, that each issue could be answered 'yes' or 'no' either way, depending on how the jury felt, but that all the issues did not have to be answered the same way? A. Exactly. I mentioned that several different times through the proceedings."

Giving instructions at variance with the charge would be more than a discussion by the jurors of the meaning of the charge, however here there appears a conflict as to whether the statement was or was not made and the matter was for the trial court. Juror George first said the matter was never mentioned and then said that he himself mentioned it several times. However this contradiction was for the trial court.

Appellant was first called as a witness by appellee. He later testified as a witness in his own behalf and was cross-examined. His testimony related to the sixteen acts submitted to the jury and, if believed by the jury, was sufficient to have supported an answer "No" to each issue.

Issue 4 inquired if appellant solicited employment as an attorney from Jeff Hemphill on or about March 9, 1955. Jeff Hemphill testified as a witness for appellee and his and appellant's testimony were sharply conflicting on the issue.

Juror Montgomery testified:

"Q. Now while you were there with the jury, I'll ask you what are the facts with reference to whether or not you referred to the fact that you had known this particular negro, Jeff Hemphill? A. I might have made a statement when we were discussing this witness that I knew him and I thought he was testifying the truth, telling the truth on the stand. I don't recall exactly.

\* \* \* \* \* \*

"A. I didn't discuss with the jury

any experience I had with this colored man.

"Q. You told them that you knew him though? A. I told them that I knew him.

"Q. And that from your knowledge of him— A. No, I told them from his testimony on the stand I thought he was telling the truth.

\* \* \* \* \* \*

"A. Back to this particular witness now, if you remember, when you were questioning the witnesses, the best I remember you accused those statements of being taken under pressure, and that they were paid to give the statement, and that they were under pressure from the company which they were working for. That was discussed, and the best I recall, the statement that I made about Jeff Hemphill, that I didn't think he was under any pressure from the company which he was working for and I thought he was telling the truth on the stand.

\* \* \* \* \* \*

"Q. Mr. Montgomery, what did you tell the jury about this negro wouldn't lie? A. Mr. O'Dowd, naturally, we discussed all the witnesses, not only this particular one, whether they were lying or telling the truth. The best I remember, I don't remember the exact words because, as you know, we had a long session in the jury room that day, but I recall telling the jury that I thought this Jeff Hemphill was telling the truth on the stand.

\* \* \* \* \* \*

"Q. I'll ask you if it isn't a fact at the time that they were talking about that pressure there, that's the time you told them you had known Jeff Hemphill 8 years? A. I don't remember, Mr. O'Dowd, whether that was the time or not.

"Q. But you did tell them you had known him 8 years? A. Yes, I did."

Juror Wood testified that Juror Montgomery testified:

"A. If I remember right, I believe that he did say that he didn't believe Jeff Hemphill was lying in this case.

"Q. And said he knew him there at the plant as an employee? A. Yes, sir.

"Q. And that from his experience out there he didn't believe he would lie? A. That's what I understood."

Juror George testified:

"Q. I'll ask you to state, Mr. George, if you heard Mr. Montgomery make any statement such as that he had had personal experience with Jeff Hemphill and he knew Jeff Hemphill would not tell a lie, or any statement such as that? A. I heard something to that effect mentioned, but who mentioned it, I don't recall, and at the time that it was mentioned I stopped it if something was mentioned."

Issue 7 inquired if appellant solicited employment as an attorney from Jessie Lee Norwood. It was alleged that appellant's contract with Norwood was by a runner. Appellant testified that Julius Berkman sent Norwood to him and Berkman so testified. Norwood testified that Earl Smith an alleged runner for appellant took him.

Juror Wood testified:

"A. \* \* \* First, I was asked if I knew Julius Berkman and I said no, I had only heard of him, and they seemed to think that he wasn't a very —well, I'll say very dependable witness.

"Q. And did they say anything about the business he was engaged in? A. They said he was in the rental business, and that he rented to a lot of the colored people down there.

"Q. What did they say with reference to whether or not they would rather believe the negro or believe him, if anything? A. I was under the im-

pression that they would believe the colored people before they would believe Julius Berkman.

"Q. Is that what they told you there? A. That's what I understood.

\* \* \* \* \* \*

"A. About Julius Berkman, as I remember, came up because I voted, I believe I voted 'no' on that particular issue, and they just asked me if I knew him, and I said I didn't.

"Q. And that's when they attempted to change you over to 'yes' on that particular issue, wasn't it? A. That's what I would say.

"Q. At that time, after you had told them that you had voted 'no,' they wanted to know if you knew Julius Berkman, and when you told them that you didn't, then they went to tell you who he was? A. Well, that's about what happened, I suppose.

"Q. And they told you then that he wasn't a dependable person, is that correct? A. That's what I understood some of them to say, they didn't think he was dependable as a witness.

\* \* \* \* \* \*

"Q. Now I'll ask you what are the facts with reference to whether or not it was after this discussion that you had about Julius Berkman that you finally changed your vote from a 'no' to a 'yes?' A. I think it was, after some discussion pro and con on the issue, I finally said 'Well, O. K.' "

Juror George testified:

"Q. Now, then, with reference to Mr. Julius Berkman, do you recall any statement to the effect that Julius Berkman was not a truthful person, or anything of that nature said in the jury room there? A. I heard Julius Berkman's name called also in the jury room. Again I cautioned them not to bring any personalities in there because

we were not trying Julius Berkman, we were only going by the evidence on the chair before us. Who said that, I don't know. I don't even know what they said. I am not sure of it.

"Q. Each time after you cautioned them not to discuss outside matters would that stop it? A. That stopped it altogether."

Mrs. Dorothy Jaynes, a juror, testified:

"Q. You don't know who the person was that asked you about Julius Berkman's credibility, do you? A. No, I don't.

"Q. And you don't know the person who answered it when the question was asked, do you? A. No, there were several."

This juror then said she did not know what was said about Berkman and did not know what Montgomery said about Hemphill.

The testimony of the other juror is not pertinent to the above matters. She was not asked about and did not testify as to the same.

The testimony of Hemphill and Berkman was material to the answers to issues 4 and 7 respectively and their credibility was for the jury. The testimony of appellant and his credibility was material as to the answer to each issue. The harmful effect of the testimony as to the credibility of these witnesses cannot be limited to issues 4 and 7 only because: the witness Hemphill was an adverse witness to appellant and their testimony was sharply conflicting; Berkman was appellant's witness and gave testimony corroborating that given by appellant, and the question was whose testimony was to be accepted by the jury (Norwood's or appellant's and Berkman's), however the question of credibility as to appellant did not stop with issues 4 and 7 but his credibility was material on each issue. The credibility of Hemphill was bolstered while that of Berkman was discredited. As to Hemphill its effect was that he was telling the truth, then

if that be true necessarily appellant was not. If appellant was not telling the truth as to the facts inquired about in issue 4 then it would logically follow that his testimony as to unanswered issues would be questionable.

Appellant and Berkman gave substantially the same testimony as to issue 7. When Berkman was discredited as a witness then appellant was also discredited.

The statement of Montgomery that he had known Hemphill for 6 or 8 years must be given some probative force in considering his statement that he thought Hemphill was telling the truth "on the stand." The two statements before the jury were inseparable and their combined effect was to bolster the testimony given by Hemphill.

It is our opinion that the above was new testimony of a prejudicial nature received by the jury and that it was well calculated to and probably did cause injury to appellant. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Elizondo v. Reagan, Tex.Com.App., 55 S.W.2d 540, 542.

In the latter case the court said:

"Certainly no court would permit a witness to give in open court the testimony bolstering the character and credibility of the defendant and his witnesses that was given in this instance in the jury room behind locked doors. It is true that the information only bore on the character and credibility of the defendant and his witnesses; but under the circumstances of this record, which shows that the evidence they gave was sharply in conflict with the evidence offered by the plaintiff on material questions, and in view of the further fact that the jury was divided on such questions at the time the statements were made, we think they were calculated to injure the plaintiff and induce, or contribute to induce, a verdict against him that might otherwise have been for him."

This is not a case of an improper comment by one juror followed by a prompt admonition not to consider such statement. The testimony of juror George cannot be given that effect because as to Montgomery he said: "I stopped it if something was mentioned" and as to Berkman he testified that he did not know what was said or who said it. Neither is it a question of misconduct occurring after the issues were answered by the jury, but certainly it occurred before some were answered. If all issues had not been answered yes then necessarily that fact would have borne a direct relation to the judgment to be rendered. Further it being established that jury misconduct did occur a question of law as to its harmful effect is presented.

Our disposition of this appeal renders it unnecessary for us to discuss appellant's points 58 and 60.

The judgment of the trial court is reversed and this cause remanded.

Reversed and remanded.