THE STATE OF TEXAS v. E. H. O'DOWD

No. A-6489. Decided April 16, 1958.
(312 S.W. 2d Series 217)

*Tom Moore,* District Attorney for McLennan County, and *W. C. Haley,* both of Waco, and *John G. Grace,* General Counsel for State Bar of Texas, of Austin, for petitioner.

The Court of Civil Appeals erred in holding that the comment by one juror regarding a certain witness was material jury misconduct requiring reversal, since the statement did not amount to material misconduct; and if material, defendant did not discharge his burden of showing the harmful nature of same. Barrington v. Duncan, 140 Texas 510, 169 S.W. 2d 462; Triangle Cab Co. v. Taylor, 142 Texas 568, 192 S.W. 2d 143; Pierce v. Briscoe, 141 Texas 159, 170 S.W. 2d 729.

*M. M. O'Dowd,* of Waco, and *F. L. Kuykendall,* of Austin, for respondent.

Cited: Phillips v. Texas & Pac. Ry. Co., 223 S.E. 2d 258; Cloudt v. Hutcherson, 175 S.W. 2d 643; St. Louis, S. P. & T. Ry. Co., 292 S. W. 182.

MR. JUSTICE WALKER delivered the opinion of the Court.

■ This is a disbarment proceeding instituted in the name of the State of Texas, petitioner, by the State Bar Grievance Committee for the 11th Congressional District against E. H. O'Dowd, respondent. Judgment was entered by the trial court disbarring respondent as an attorney at law, subject to reinstatement as provided in the Rules of the State Bar, but the Court of Civil Appeals reversed on grounds of jury misconduct and remanded the cause for a new trial. 304 S.W. 2d 241. It is our opinion that while jury misconduct may have occurred and affected the jury's answers to two of the issues, the same does not vitiate the entire verdict or constitute grounds for setting aside the trial court's judgment.

The petition charged respondent with many specific acts of

professional misconduct, and also alleged that he had an established practice and system of soliciting employment in workmen's compensation cases personally and through runners. Sixteen special issues were submitted by the trial court, and by their affirmative answers thereto the jury found that respondent: (1-9, 11) had solicited employment as an attorney from ten different individuals, (10) had knowingly obtained a contract of employment from one of them when the latter did not have sufficient mental capacity to know the nature and consequences of his act in signing the contract, (12-15) had filed four claims with the Industrial Accident Board for the purpose of harassing or distressing employers or their insurance carriers, and (16) had a definite system and established practice to solicit, personally and through agents or runners, professional employment in the prosecution of workmen's compensation claims.

Issues Nos. 4 and 7 inquired whether respondent had solicited employment from Jeff Hemphill and Jessie Lee Norwood; as indicated above, the jury found that he had. Hemphill was called as a witness by petitioner on the first of these issues, and respondent offered the testimony of one Julius Berkman on the Norwood incident. Although the trial court was not requested to and did not file findings of fact after the hearing on the motion for new trial, the evidence introduced at such hearing establishes rather clearly that during their deliberations some members of the jury were informed: (1) by the juror Montgomery that he had known Hemphill for eight years, that as far as he knew he thought the witness was truthful, and that he believed the latter was telling the truth on the stand; and (2) by one or more jurors that they knew Berkman or knew of him and did not think he was dependable as a witness. The natural effect of this unsworn "testimony" was to bolster the character and credibility of Hemphill and discredit that of Berkman, and it appears that after the statements were made, one juror may have changed his vote and agreed to answer the issue relating to Norwood in the affirmative. We shall assume then that jury misconduct was shown and probably affected the answers to Issues Nos. 4 and 7. See Elizondo v. Reagan, Texas Com. App., 55 S.W. 2d 540; Storey v. Zuniga, Texas Civ. App., 254 S.W. 2d 415 (wr. ref. n.r.e.); Thompson v. Goode, Texas Civ. App., 221 S.W. 2d 569 (wr. ref. n.r.e.).

This brings us to the more serious question of whether the misconduct was reasonably calculated to and probably did cause the rendition of an improper judgment. Respondent's solicita-

tion of employment from Hemphill and Norwood, if found by the jury, would constitute additional circumstances tending to show an established practice of obtaining clients in that manner, but the testimony of Hemphill and Berkman has no bearing upon any of the iussues submitted to the jury except Nos. 4, 7 and 16. Their answers to the remaining thirteen issues establish that respondent solicited employment from eight other persons, knowingly obtained a contract of employment from one who did not have sufficient mental capacity to understand what he was doing, and filed four claims for the purpose of harassing employers or their insurance carriers. In view of these findings, it is not reasonable to suppose that the trial court's judgment would have been any less severe if Issues Nos. 4, 7 and 16 had been answered in the negative. The case is thus controlled by the rule announced in Cloud v. Zellers, this volume, ante 253, 309 S.W. 2d 806, unless it can be said that the misconduct probably influenced the jury's answers to a substantial number of the remaining issues.

Our decision in Scoggins v. Curtiss & Taylor, 148 Texas 15, 219 S.W. 2d 451, is not in point. The statements made by the juror in that case meant that he believed the witness had been paid or otherwise corruptly induced to give false testimony, and thus constituted an attack upon the character of the party who offered the witness. Here the misconduct amounted to nothing more than saying that Hemphill was worthy of belief and Berkman was not. It is respondent's theory, however, that the statements bolstering the credibility of Hemphill and discrediting that of Berkman injuriously affected his own credibility in the eyes of the jury and thus influenced their answers to all of the issues. He says that when the jurors were informed that Hemphill was truthful, this necessarily meant that respondent's own testimony was untrue, and that when they were told that Berkman was not worthy of belief, this branded respondent as a falsifier. We do not agree.

There is no material conflict in the evidence given by Hemphill and respondent. As a matter of fact, they are in substantial agreement as to the events which transpired when both were present. Each testified that respondent visited Hemphill in the hospital, that they there discussed Hemphill's injuries and respondent's handling of other cases at General Tire & Rubber Company, and that respondent handed Hemphill some papers which the latter signed. Hemphill stated that the papers were folded and that he signed without reading them, while respondent declared that he did not try to deceive Hemphill by folding

the contract, but this is the nearest approach to a conflict in their testimony.

The crucial question, of course, was whether respondent visited Hemphill at the latter's invitation, and if so, whether the invitation originated with Hemphill or was procured by someone acting in respondent's behalf. It was petitioner's theory in the trial court that one of respondent's runners was a man named Willie Earl Smith, and evidence was introduced which supports the conclusion that Smith took or sent a number of different claimants to see respondent. Hemphill testified that the evening before respondent visited him, a Negro he later larned was Willie Earl Smith came to his room, told him that respondent was coming to the hospital to see another man, and asked whether he would like to see respondent, and that he replied in the affirmative. Respondent's version was that one Doc Isaac came to his office and told him that Hemphill wanted to see him, and that he and Isaac went to the hospital together. Hemphill stated that while Isaac visited him in the hospital, he did not request the latter to have respondent come to see him. This testimony on the part of either respondent or Hemphill could have been contradicted only by Isaac or Smith, and neither of them was called as a witness. Respondent did not testify that Smith had not contracted him, and Hemphill was not asked whether Isaac was with respondent when the latter came to the hospital. Since there is no essential conflict between respondent's and Hemphill's testimony, we fail to see how a conviction that one was telling the truth would necessarily lead to the conclusion that the other was unworthy of belief.

We also find that respondent's testimony touches the evidence given by Berkman at only one point. Petitioner offered the testimony of Norwood in support of its contention that his employment of respondent was procured by Willie Earl Smith The witness stated that Smith, who is his brother-in-law, drove him to see respondent at the latter's home on New Year's morning, that he there signed some papers, and that the trip was suggested by Smith. Respondent countered with Berkman, who testified that he was in the real estate business and that Norwood, who rented a house which he managed, had fallen behind in the payment of rent. He further stated that he told Norwood either to pay the rent or get out, that the latter said he would have to get a lawyer, that he told Norwood to go see respondent, and that about a week later he called respondent to inquire whether Norwood had been there and was advised that he had. Norwood admitted owing rent to Berkman but denied that the

latter sent him anywhere. Respondent testified that Norwood came to his office and there signed a contract and statement, but did not say that he ever talked with Berkman or that Smith was not with Norwood. The telephone call is mentioned, however, in the testimony of both respondent and Berkman. Respondent stated "* * * [Norwood] came to my office. Julius Berkman had called down there and talked with [my secretary] * * * *." This suggests that Berkman talked with the secretary before Norwood's visit to the office, while Berkman referred only to a conversation with respondent after the latter had seen Norwood. It should also be noted that Norwood's testimony is not relevant on any of the issues except Nos. 7 and 16. In this state of the record, we cannot say that an opinion that Berkman was not telling the truth would be reasonably calculated to induce a belief that respondent was untruthful.

Although the record shows that the issues were not answered in order, it fails to disclose at what stage of the deliberations the misconduct occurred. There is no basis then for saying that any of the issues were unanswered at the time except Nos. 4 and 7. During their deliberations, the jurors discussed all of the witnesses and whether or not each was telling the truth. It does not appear that the credibility of Hemphill or Berkman was expressly related to that of respondent or was discussed at any greater length than that of the other witnesses. The foreman testified that on each occasion he cautioned the jurors not to bring personalities into the case or discuss anything except the evidence, and that this put an end to the matter.

The record of the hearing on the motion for new trial shows that the jury was out from 9:00 o'clock in the morning until at least 5:00 o'clock that afternoon. On at least two occasions, they requested to be and were brought back into the court room to have various portions of the testimony read to them. Forty-three witnesses testified in the course of the trial, thirty-one being called by petitioner and twelve by respondent, and a substantial amount of documentary evidence was also introduced. The testimony covers 1185 pages of the statement of facts, and the jury's answers to all of the issues are amply supported by the evidence.

■ From a consideration of the entire record, we are inclined to the view that the jurors' conclusions as reflected by their answers to the several issues were probably drawn from the evidence introduced and the demeanor of the witnesses whom they observed rather than from the improper statements made

in the jury room. In any event, it cannot be said that such misconduct was either reasonably calculated to or probably did cause the rendition of an improper judgment. This conclusion requires that the judgment of the trial court be upheld unless there is some other ground for setting it aside.

■ The Court of Civil Appeals found it unnecessary to pass on respondent's points Nos. 59 and 60, which assert that the judgment of disbarment is excessive. He now argues that this is a question of fact, and that the cause should be remanded to the intermediate court with instructions to pass on these points. Issues of fact raised by the evidence in a disbarment proceeding are decided by the jury where one is requested, but if the verdict establishes that the defendant has been guilty of professional misconduct, the question of whether he shall be reprimanded, suspended or disbarred is a matter for the determination of the trial judge in the exercise of a sound judicial discretion. See Rules of the State Bar, Art. XII, Sec. 28*; Ashby v. State, Texas Civ. App., 283 S.W. 270 (no writ). A contention that there has been an abuse of judicial discretion presents a question of law which can be decided by this court, and it is our opinion that the trial judge did not abuse his discretion in this case. Although respondent argues to the contrary, the various statements made by the district judge in the course of the proceedings do not show bias or prejudice but merely disclose his patient efforts to conduct an orderly trial in accordance with established rules of procedure.

■ Respondent directs our attention to another alleged incident of jury misconduct which was urged in the Court of Civil Appeals. He contends that one of the jurors informed his associates that all of the issues must be answered "yes" or all must be answered "no." As pointed out by the Court of Civil Appeals, there is evidence to support the trial court's implied finding that this did not occur, and such finding is final and binding on the appellate courts. Price v. Biscoe, 141 Texas 159, 170 S.W. 2d 729. We have also examined respondent's brief in the Court of Civil Appeals, but do not find any ground upon which the judgment of that Court can be affirmed.

The judgment of the Court of Civil Appeals is accordingly reversed, and the judgment of the trial court is affirmed.

Opinion delivered April 16, 1958.

---

*[Vernon's Anno. Texas Civ. Stat., Following Art. 320a-1. Vol. 1, pp. 693, 707.]