Zacarias ORNELAS, Ind., et al., Appellants,

v.

MOORE SERVICE BUS LINES and Raymond Zavala, Appellees.

No. 5807.

Court of Civil Appeals of Texas.

El Paso.

Dec. 28, 1966.

Rehearing Denied Feb. 1, 1967.

Joseph J. Roybal and Heriberto J. Porras, Jr., El Paso, for appellants.

Kemp, Smith, White, Duncan, & Hammond, William E. Duncan, El Paso, for appellee.

## OPINION

FRASER, Chief Justice.

This is an appeal from a judgment of the District Court of El Paso County, Texas. The case was submitted to the jury against both parties defendant, and the jury returned a verdict in the sum of $48,000.00 against the defendant Raymond Zavala, and no finding of negligence on the part of the defendant Moore Service Bus Lines. This appeal is directed against the jury's findings in connection with the appellee Moore Service Bus Lines, and the judgment rendered by the court.

The controversy involves a bus injury suit in which appellant Irma Ornelas Sanchez, a minor at the time of the injury, was a passenger in a bus operated by appellee, Moore Service Bus Lines. The said bus was involved in a collision with a station wagon driven by defendant Raymond Zavala. The appellant, Irma Ornelas Sanchez, alleges that she was seriously injured at the time of the collision. The action was filed by appellant Irma Ornelas Sanchez, who was joined by her husband, Gilbert Sanchez, and Zacarias Ornelas, who filed this suit as next friend of Irma Ornelas when she was a minor, and before her marriage.

The case was submitted to the jury against both defendants.

It appears that this accident happened April 28, 1962, at about five P.M., on Alameda Avenue, which is one of the more heavily traveled streets of El Paso. According to a witness, Mrs. Wade, who was driving her passenger car a short distance ahead of the bus, the station wagon, driven by defendant Raymond Zavala, was approaching on the wrong side of the avenue and she, Mrs. Wade, began stopping her car when she saw Zavala's car crossing the highway. She further stated that she assumed that he, for some reason, was cutting off the highway on the wrong side, but as she watched, she saw him go to the shoulder of the highway to her right, and then back across and straight into the path of the bus at a speed of about 40 to 50 miles per hour. She states that the distance between the collision and the place where she stopped her car was about a block. Her testimony is further illustrated in defendant Moore Service Bus Lines Exhibit No. 6. The red line thereon, which is almost a half-moon, shows the path of the Zavala car as it came down on the wrong side of Alameda Avenue. At the time of the accident there were two yellow lines down the middle of the avenue, and Zavala is first noticed as he was approaching from the west to the east on the inside lane, which is the lane next to the yellow stripes on the northerly half of the street which, of course, was on the wrong side of the avenue for him while traveling in the direction he was going. As Mrs. Wade's testimony indicates, the line shows Zavala made an abrupt left turn, going farther across the wrong side of Alameda and clear out and onto the shoulder.

Then he turned back to his right and across the outer lane of Alameda and struck the bus head-on in the inside lane of the northerly part of Alameda Avenue. Mrs. Wade said she saw the entire occurrence and, as stated, when she first saw Zavala cutting across the street in front of her, assumed that he was going across and off the highway to some destination on that side; but as she watched, he reversed his direction, came back on to the highway, and struck the bus. It is obvious from her testimony and the exhibits that during this entire time Zavala was never on the right side of the street, as will appear from Exhibit 6. Another witness, Chavez, who was a passenger in the bus, described the accident just about as Mrs. Wade told it, and he further stated that the Zavala car was going very fast. The passenger in Zavala's car was killed, and Zavala was unable to remember anything except that he had been to a drinking party the night before, had returned to his work at around four o'clock in the morning; then, several hours later, went to Zaragosa, Mexico to drink some beer. He claims not to have remembered anything.

The driver of the appellee's bus testified that he had been on the outside, or northern-most lane of Alameda Avenue, but, as he approached the intersection of Carolina and Alameda, he looked in the mirror and began turning into the inner lane, which would be the lane nearest the double stripe, so that when he arrived at the intersection he could make a left turn into the Cedar Grove area. He says that he looked in his rear mirror and had made his change of lanes, when he saw Zavala approaching. He stated, also, that Zavala was driving his car at about 40 to 50 miles per hour; that he, the bus driver, applied his brakes slowly, but could not make any safe turn to avoid the collision and was unable to do anything other than he did, and that he didn't have time to warn the passengers. His testimony indicates that the entire accident happened so fast, and the right turn of the Zavala car was so sudden and un-

expected, that he was unable to take any effective preventive measures with the bus he was driving. The picture or photographs taken show that the Zavala car drove headlong into the bus, and it is in evidence that the driver of the bus had to be removed by the use of a blowtorch.

Plaintiff bases her claim on the assertion that the bus driver did not warn her in time for her to take hold of anything; that she was injured by being suddenly propelled forward into and against the coin box, and that such propulsion of her body was caused by the bus driver applying his brakes suddenly and improperly.

The jury found that the driver of the bus did not fail to timely apply his brakes and did not fail to exercise proper care in warning appellant of the impending collision, and that the bus driver was acting under an emergency immediately prior to the collision. The jury, after acquitting the bus driver of any negligence, found defendant Zavala, the driver of the station wagon, guilty of driving on the wrong side of the street and that such was negligence and a proximate cause of the accident; that he operated his automobile at a rate of speed in excess of ordinary prudence and care under the circumstances there present, and that such was a proximate cause of the collision; and lastly, the jury found that reasonable compensation for plaintiff and her father would be $48,000.00.

Appellants maintain that the District Court was in error in refusing to grant a judgment N.O.V. with respect to Special Issues 3 and 4, which relate to appellants' claim that the driver of the bus failed to properly warn Irma Ornelas Sanchez of the impending collision; also, that the District Court committed error in not granting appellants' motion to set aside the verdict on Special Issues 1 and 2, which relate to the finding by the jury that the driver did not timely fail to apply his brakes at the time of the collision; also, that the court erred in not granting a directed verdict as to Special Issue 5, which issue was answered by the

jury to the effect that immediately prior to the collision the bus driver was acting under an emergency.

■ We believe that these matters which are brought up by appellants' first three points of error do not reflect error on the part of the trial court. The statement by appellant, that there was no evidence contrary to her position that her injuries resulted from the negligent failure of the bus driver to timely warn her and to timely apply his brakes, cannot be sustained. The bus driver himself testified that he had no time to warn anyone, and that he was applying his brakes carefully at the time of the collision. Plaintiff Irma states that she had just boarded the bus and was reading a Spanish magazine called "Confidencias" and doesn't remember anything until she regained consciousness in the hospital. We do not find any allegation in the appellants' briefs that anyone testified that the bus driver failed to timely apply his brakes. This matter is handled in the briefs on the ground that this was the only inference that could be drawn. However, the jury did not so find. With regard to the finding of the jury that the bus driver found himself in a sudden emergency, we believe this finding is amply supported by the testimony of the witnesses Wade, Chavez and the bus driver. Therefore, plaintiff has had to rest her case on the inference that the bus driver negligently failed to timely apply his brakes and negligently failed to timely warn the passengers of the impending collision. We believe the evidence was sufficient to support the answers of the jury to the issues relating to these matters, and it must be noted here that the issues contained an adequate description of the duties imposed upon a driver, such as the bus driver here. There is no question but what appellant Irma was badly injured, but we do not find error in the submission to, and the findings of, the jury relating to the bus driver's activities, especially when the jury found that he was acting under a sudden emergency. There is actually no testimony of faulty application of brakes

by the bus driver. We believe, therefore, that appellants' Points 1, 2 and 3 must be overruled.

■ Appellants' Point 4 charges the trial court with error in refusing to submit a proper definition of a common carrier, and requested issues thereon. We find no error in this point, as the court included in the issues submitted the wording, "as would have been made by a very competent, prudent and cautious person engaged in the carrying of passengers for hire, under the same or similar circumstances". These were negligence issues, and a separate definition would have been repetitious and unnecessary, as the issue itself properly set the standard. We find no error in this point, and it is accordingly overruled.

■ Appellants' fifth and sixth points maintain that the trial court should have reversed the judgment and granted a motion for mistrial because of misconduct of the jury. We have examined the evidence with regard to this matter and do not believe there is merit in these two points. The record shows that the trial court gave all parties a full hearing and opportunity to present their proof. The argument centers around one juror, Nicholas, who, it is alleged, "bragged" about being a jet pilot and who was alleged to have had something in his hand with which he was calculating speeds and distances; but there is much sharp conflict between the jurors themselves. Some say they did not pay any attention to him, others stated they didn't know what he was talking about and that his remarks were getting "monotonous". Some jurors said the foreman warned them and some said they told Nicholas that he shouldn't consider anything except that which was in evidence. Taken at its best, it is obvious that the juror Nicholas did not attempt to bring any new evidence into the jury room. He apparently only was making calculations based on evidence such as speed, seconds and elapsed time, which had been presented in the trial of the case. There is no contention that the juror

Nicholas used any speed or distance not shown in the evidence. Of course it is elementary that jurors may draw on common knowledge and experience, and that seems to be the situation here. We do not find adequate proof of what Nicholas had in his hand, or that whatever conclusions he was purported to have announced, were outside of natural inferences and common experience. Of course the burden of proof is always on the party asserting misconduct, and he must prove not only that the misconduct occurred, but that it resulted in probable injury to a party and caused a materially unfair verdict or judgment. Tudor v. Tudor, Tex.Civ.App., 311 S.W.2d 733; 158 Tex. 559, 314 S.W.2d 793 (1958); Texas Employers' Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916 (1958); Davis v. Damge, 328 S.W.2d 203 (Houston Civ.App. 1959; re., n. r. e.). Where the evidence on jury misconduct is conflicting, the trial court has the duty and the right to resolve any inconsistencies, and if such ruling is supported by evidence, it is binding on the reviewing court. State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217 (1958); Dallas Transit Company v. Collier, 317 S.W.2d 557 (Civ. App., n. w. h.). These two points, therefore are overruled.

■ Appellants' Point 7 charges the trial court with error in refusing to submit plaintiffs' requested Issues 1, 2, 3 and 4. We have examined these issues and find no error in the action of the court. Issues 1 and 2 are erroneously worded in that they assume improper action on the part of the bus driver, and Issues 3 and 4 are not necessary and are erroneous because they concern issues that were not contested—namely, whether appellant Irma was thrown forward and injured, and whether it was her own fault; and No. 4 is erroneous in that it is too vague and asks for a general finding. All of these requested issues were included in a "Suggested Court Charge" which included, also, the definition of the degree of care owed by a common carrier. This point is therefore overruled.

■ Appellants' Points 8 and 9 also relate to matters contained in the "Suggested Court Charge". These two points assert that the trial court should have submitted issues on discovered peril and last clear chance; but examination of the requested issues themselves indicates that they were erroneous and that neither discovered peril nor last clear chance was raised by the evidence. These two points must also be overruled.

■ Appellant's tenth and last point claims the court committed error in refusing to admit Texas Driver's Manual into evidence in connection with the requested special issues, including last clear chance and discovered peril. We find no error here, as the Manual was not offered in evidence, nor was it proffered as predicate for complaint on appeal. This point must therefore also be overruled.

Summing up, we find a driver of a large passenger-carrying bus moving from his outside to his inside lane of a four-lane avenue and discovering, as he enters the inside lane, a station wagon coming toward him on the wrong side of the street, then veering off clear across the rest of the street to the shoulder and then swerving back into and on to the avenue, and hitting the Moore Company bus head-on. The diagram and exhibits show these facts, and that the collision was apparently straight head-on and not sidewise. Appellant has tried to recover on the ground that the driver of the bus was not acting under an emergency and did not timely warn her or any passengers of the impending collision and did not timely apply his brakes. It must be noted here, with regard to the matter of warning appellant Irma Ornelas Sanchez, that, by her own testimony, she was reading a magazine; and therefore it is obvious that the bus driver would first have had to have seen the impending collision or peril in time to give a warning to his passengers, and then, added to his reaction time, would be added the reaction time of the girl, who was absorbed in reading a magazine. She

would have had to understand and act immediately on any warning given by the driver, and it is not in the evidence that she could have done so in time to have prevented injury to herself. She bases her case on inferences, rather than facts. At least two witnesses testified that the station wagon was traveling between 40 and 50 miles per hour, and it is hard to determine, other than by speculation, that the bus driver should have or could have guessed that this erratic driver would suddenly swerve from the outside shoulder and come rushing across the avenue and hit the bus head-on. There was a lot of testimony in this case, but it is not clear anywhere what the bus driver could have done to have prevented the injury to the plaintiff under the conditions and the emergency existing at the time.

Appellants' points are therefore overruled, and the decision of the trial court affirmed.