**Donald E. KILPATRICK, Appellant,**

v.

**The STATE BAR OF TEXAS, Appellee.**

**No. A14–92–0709–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 20, 1993.

Rehearing Denied June 24, 1993.

Wayne H. Paris and David W. Holman, Houston, for appellant.

Linda A. Acevedo, Austin, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

LEE, Justice.

This is a disciplinary proceeding. Appellee, The State Bar of Texas (the State Bar), filed suit against appellant, Donald E. Kilpatrick, an attorney, for alleged professional misconduct in soliciting his legal services to Bill Camp. The case was tried to a jury which found in favor of the State Bar and the court entered judgment disbarring Kilpatrick from the practice of law. Kilpatrick appeals,

bringing fifteen points of error. We reverse and remand for a new trial.

On June 13, 1989, Bill Camp, an attorney in Houston, suffered a brain injury during a routine, out-patient, medical procedure. On June 20, 1989, Bill Camp's wife, Susie, was appointed to serve as temporary guardian for her husband and Nancy Lipp was appointed attorney ad litem for Mr. Camp. On June 30, 1989, the probate court issued an Order Affirming Temporary Guardianship and for Payment of Attorney Ad Litem. Susie Camp was appointed permanent guardian on September 1, 1989. Prior to his injury, Bill Camp had been separated from his wife. On July 19, 1989, Kilpatrick visited Mr. Camp, who was still hospitalized at the Texas Institute for Research and Rehabilitation (TIRR). That visit was not requested by Bill Camp, his family or any legal representative of Mr. Camp. During that visit, Kilpatrick obtained the signature of Bill Camp on a power of attorney that authorized Kilpatrick to prosecute a medical malpractice action. It also authorized Kilpatrick to associate with other legal counsel to protect Mr. Camp's interests. Only Kilpatrick was present when Mr. Camp signed the power of attorney. A few days before his visit, Kilpatrick had learned of possible negligence in connection with Mr. Camp's injury from the law firm of Hornbuckle and Montgomery. The law firm had learned of Mr. Camp's injury from Dr. C. Jay Morris, who was the emergency room physician on duty at the time of the incident. Kilpatrick had telephoned Mr. Camp's law office to find out where Mr. Camp was hospitalized. According to Kilpatrick, Mr. Camp's associate did not mention Mr. Camp's incapacity but told him that Mr. Camp would be glad to have visitors. Kilpatrick only knew Bill Camp as a "brother lawyer." Before this incident, Kilpatrick never socialized with Bill Camp outside the practice of law or met Bill Camp's family.

As he was leaving Mr. Camp's hospital room, Kilpatrick met Bill Camp's mother, Barbara, and Joseph Dale Dodd, a family friend. According to Kilpatrick, he told Barbara Camp that he was "Bill's lawyer." Kilpatrick says that Barbara Camp did not protest this statement. When Kilpatrick told Dodd that Mr. Camp had "signed something," Dodd responded that he was helping the Camp family look for legal representation for Bill and he named several attorneys. The following day, Kilpatrick telephoned Susie Camp at her home where she was recuperating from an auto accident. According to Kilpatrick, the telephone call was at Bill Camp's request. He told her that Bill had authorized him to proceed with a lawsuit. Susie Camp responded that she had been appointed temporary guardian of Bill's estate, "that Bill was in no condition to hire anyone," and that Kilpatrick "did not have any authorization to do anything." On July 21, 1989, two days after Kilpatrick's visit, the law firm of Hornbuckle and Montgomery filed a medical malpractice lawsuit on behalf of Bill Camp.

Following her conversation with Kilpatrick, Susie Camp hired a lawyer, Robert MacIntyre, to assist her with the guardianship. Mr. MacIntyre went to Kilpatrick's office and asked him to relinquish his contract with Mr. Camp. Kilpatrick refused, stating that he had valid contract and was entitled to a referral fee. By letter to Kilpatrick dated October 6, 1989, Mr. MacIntyre again requested Kilpatrick to relinquish his contract with Bill Camp because Mr. Camp was "incompetent" and "incapable of entering into a contract." In a response letter dated October 10, 1989, Kilpatrick again refused and asserted his belief in Bill's competence and the validity of the contract. Kilpatrick ended the letter by offering to surrender his rights under the contract for $277,000.00. That figure, according to Kilpatrick, was not based on any formula or calculation.

On November 17, 1989, the probate court held a hearing on a Motion to Show Authority filed pursuant to TEX.R.CIV.P. 12 by Susie Camp as guardian of the person and estate of Bill Camp. The court found that Bill Camp was adjudicated incompetent on June 20, 1989, that he was incompetent on the date he signed the power of attorney with Kilpatrick, and that the medical malpractice action prosecuted on Bill Camp's behalf was without the authority of his legal guardian. The order signed by the court on December 8, 1989, declared the power of attorney void and re-

quired Kilpatrick to pay attorney's fees to Susie Camp, as guardian. That same day, Kilpatrick appeared at Mr. MacIntyre's office with a motion to recuse the probate judge and an offer to refrain from filing the motion if Mr. MacIntyre would pay him a referral fee.

The State Bar filed its disciplinary petition four months later in April 1991. The petition alleges that Kilpatrick: violated a disciplinary rule (DR 1–102(A)(1)); engaged in conduct involving dishonesty, deceit, or misrepresentation (DR 1–102(A)(4)); engaged in conduct that is prejudicial to the administration of justice (DR 1–102(A)(5)); engaged in other conduct that adversely reflected on his fitness to practice law (DR 1–102(A)(6)); and initiated contact with a prospective client for the purpose of obtaining employment (DR 2–103(D)(1)). *See* TEXAS CODE OF PROFESSIONAL RESPONSIBILITY, *repealed by* SUPREME COURT, STATE BAR RULES (TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT), V.T.C.A., TEX. GOV'T CODE ANN., Title 2, Subtitle G, Appendix, art. X, § 9 (effective January 1, 1990).

Trial was on March 10, 1992. Three questions were submitted to the jury. Jury question 1 asked: "Did Donald E. Kilpatrick initiate contact with Bill Camp as a prospective client for the purpose of obtaining professional employment when he knew or should have known that Bill Camp could not exercise reasonable judgment in employing a lawyer." Questions 2(a) through 2(d) asked whether "Donald E. Kilpatrick engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation:" (a) "in obtaining Bill Camp's signature on a power of attorney employing Donald E. Kilpatrick as an attorney to prosecute a medical malpractice claim;" (b) "in asserting that Bill Camp was competent to enter into a contract;" (c) "in associating with other attorneys to file suit on behalf of Bill Camp after being advised that Bill Camp was the subject of a temporary guardianship;" and (d) "in requesting payment of $277,000.00 to relinquish his claims under the contract signed by Bill Camp." Jury question 3 asked: "Did Donald E. Kilpatrick, with intent to obtain an economic benefit for himself, solicit employment for himself to prosecute a suit or to collect a claim." All three

questions were answered in the affirmative. The following morning, the court heard argument on sanctions and on March 13, 1992, entered judgment disbarring Kilpatrick from the practice of law. We address only points six and eight through thirteen because they are dispositive of this appeal.

In points of error eight through thirteen, Kilpatrick contends the trial court erred in allowing the State Bar's trial amendment on the conduct of barratry and in submitting that issue to the jury. At trial, there was a single passing reference to "barratry" during the testimony of expert, Fred Hagans. On re-direct examination, Mr. Hagans was asked to define barratry. Kilpatrick's counsel objected that the definition was a "matter for the court." The court overruled that objection and Hagans answered: "Well generally it's a statute that makes it a criminal offense to solicit business by, you know, under certain circumstances." Mr. Hagans was then asked whether the barratry statute makes a distinction between the location of the solicitation. Kilpatrick's counsel objected that the subject had not been addressed on cross-examination and was not proper for re-direct. The court overruled that objection and Hagans responded that he could not recall the statute making such a distinction.

During the charge conference, the State Bar requested a trial amendment on "barratry" that contained the definition in TEX.PENAL CODE ANN. § 38.12(a) (Vernon Supp. 1993). Kilpatrick's counsel objected that the issue was "not in their petition," that there was no "real testimony to that effect," and that it had not been tried by implied consent. Counsel for the State Bar responded that testimony of barratry was before the jury without objection. The court granted the State Bar's trial amendment and a copy of the proposed charge was submitted to the court. Question 3 conformed to the language in the trial amendment. It also instructed the jury "that intent to obtain an economic benefit is presumed if a person accepts employment for a fee, accepts a fee, or accepts or agrees to accept money or any economic benefit." TEX.PENAL CODE ANN. § 38.12(b) (Vernon Supp.1993). At that point, Kilpatrick's counsel objected that the question and

instruction were not relevant to the case, not supported by the pleadings, and did not constitute a violation of the disciplinary rules. Kilpatrick's counsel further stated that he was "not qualified or ready to try a barratry case," that he was "surprised," and that it was an "unfair jury question." The court overruled these objections. Kilpatrick's attorney then moved for a continuance which was promptly denied by the trial court.

■ A trial court has no discretion to refuse a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and, thus, is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990) (citations omitted); *see* TEX. R.CIV.P. 63 and 66. Here, the trial amendment was prejudicial on its face. While counsel's objections to the trial amendment and jury question were inartfully stated, it is obvious from his objections that he thought section 38.12 could not be applied to a disciplinary proceeding.

■ Former article X, section 7(5) of the State Bar Rules, now section 8.04(8) of the disciplinary rules, states that discipline may be imposed for professional misconduct which includes engaging in conduct which constitutes barratry as defined by the law of this State. STATE BAR RULES, article X, § 7(5), *repealed by* SUPREME COURT, RULES OF DISCIPLINARY PROCEDURE, V.T.C.A., TEX. GOV'T CODE ANN. Title 2, Subtitle G, Appendix A–1, § 1.04 (Vernon Supp.1993) (effective May 1, 1992). The law of this State defines "barratry" in section 38.12, a criminal statute. While an attorney may be disciplined for an act which constitutes an offense under the Penal Code, the disciplinary rules and not the Penal Code provide the basis for discipline. *See Smith v. State*, 523 S.W.2d 1, 5–6 (Tex.App.—Corpus Christi 1975, writ ref'd n.r.e.); *see also* TEX.GOV'T CODE ANN. § 82.062 (Vernon 1988). A disciplinary proceeding is a civil, not a criminal trial. *State Bar of Texas v. Evans*, 774 S.W.2d 656, 657 n. 1 (Tex.1989). While the disciplinary rules authorize discipline for certain acts that may also violate the criminal law, they were not intended to supplant the Penal Code or permit criminal prosecutions within civil disciplinary proceedings. Section 38.12(i) provides that a "final conviction of felony barratry is a serious crime for all purposes and acts, specifically including the State Bar Rules." That section, when read with section 8.04 of the disciplinary rules and the rules of disciplinary procedure, contemplates a criminal prosecution for barratry *in addition to* discipline for professional misconduct. SEE RULES OF DISCIPLINARY PROCEDURE, 1.06, 8.01–8.06.

■ Here, Kilpatrick could have been prosecuted for barratry and then the State Bar could have used that conviction in this disciplinary proceeding. STATE BAR RULES, article X, § 26 (repealed 1992). Instead, there was no criminal prosecution, yet, the State Bar obtained a finding of criminal wrongdoing without the hardship of the higher burden of proof which is necessary for a conviction. That procedure was improper and prejudicial. We are aware of the language in section 82.062 of the Government Code authorizing the disbarment of an attorney "who is guilty of barratry ... regardless of the fact that the act complained of may be an offense under the Penal Code and regardless of whether the attorney is being prosecuted for, or has been convicted of the offense." We read section 82.062 as merely authorizing discipline for professional misconduct which not only is a violation of the disciplinary rules, but of the Penal Code. This section does not, however, dispense with the requirement of obtaining a criminal conviction for use in a subsequent disciplinary proceeding. "Solicitation" is not only a violation of the disciplinary rules but of TEX.PENAL CODE ANN. § 38.12. DISCIPLINARY RULES OF PROFESSIONAL CONDUCT, § 7.04. In the instant case, the State Bar correctly proceeded under the disciplinary rule that prohibited solicitation. DR–2–103(D)(1) (repealed 1990). It was unnecessary and improper for the State Bar to obtain a finding of criminal wrongdoing where it had already proven a violation of the disciplinary rules. Submission of such a duplicitous issue was clearly erroneous and we can only conclude that it was done to prejudice Kilpatrick. *See*

*Holmes v. J.C. Penney Co.,* 382 S.W.2d 472 (Tex.1964); *see also* Tex.Gov't Code Ann. § 82.062.

▮ Also, by allowing the trial amendment and submission of question 3, the State Bar was permitted to submit an improper instruction. As we noted, the instruction tracked the language in section 38.12(b), however, subsection b was not even in effect at the time of the solicitation. *See* Act of Sept. 1 1989, 71st Leg., R.S., ch. 866, §§ 2, 5(a) 1989 Tex.Gen.Laws 3855, 3856–57. Finally, we observe that "barratry is defined to prohibit conduct that tends to foment litigation, for purposes other than the pursuit of justice, in situations where litigation might not otherwise arise." Tex.Penal Code Ann. § 38.12 (Vernon 1974) (practice commentary). In the instant case, Kilpatrick's conduct did not "tend to foment litigation" because it is undisputed that Bill Camp required a lawyer and that litigation of Mr. Camp's medical malpractice claim was likely, regardless of who represented him. Accordingly, we find that the trial court erred in granting the trial amendment and in submitting jury question 3. Viewing the totality of the circumstances, we find that the inclusion of the question 3 and the accompanying instruction amounted to such a denial of Kilpatrick's rights as to cause the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Assoc.,* 710 S.W.2d 551, 555 (Tex.1986); Tex.R.App.P. 81(b). We sustain points eight through thirteen.

▮ In his sixth point of error, Kilpatrick contends the trial court abused its discretion in ordering him disbarred. A contention that there has been an abuse of discretion presents a question of law. *Smith v. State,* 490 S.W.2d 902, 912 (Tex.App.—Corpus Christi 1972, writ ref'd n.r.e.) (*quoting State v. O'Dowd,* 158 Tex. 348, 312 S.W.2d 217, 221 (1958)). The trial court has broad discretion to determine whether an attorney should be reprimanded, suspended or disbarred as a result of a finding of professional misconduct in a disciplinary proceeding. *See O'Dowd,* 312 S.W.2d at 221; *State Bar of Texas v. Wolfe,* 801 S.W.2d 202, 204 (Tex. App.—Houston 1990); State Bar Rules, art.

X §§ 8, 23 (repealed 1992). The very authorization of a wide range of sanctions for violations of the disciplinary rules contemplates just discipline for the misconduct committed. *Daves v. State Bar of Texas,* 691 S.W.2d 784, 791 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.), *dism'd,* 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986). A judgment of a trial court in a disciplinary proceeding may be so light, or so heavy, as to constitute an abuse of discretion. *Id.* (*citing State v. Ingram,* 511 S.W.2d 252, 253 (Tex. 1974)).

The State Bar cites former article X, section 23 of the State Bar Rules which was in effect at the time of this proceeding. That section listed several factors that the trial court was required to consider if it decided, in its discretion, to hold an evidentiary hearing on the appropriate measure of discipline. The trial court, however, did not hear additional evidence on sanctions, but allowed both sides to argue the evidence presented at trial. Counsel for the State Bar argued for disbarment pointing out that this case involved in-person solicitation of a mentally and physically impaired accident-victim. Counsel maintained that the jury's verdict supported a finding that Kilpatrick violated the disciplinary rules described in the State Bar's petition. Counsel also invoked Tex. Gov't Code Ann. § 82.062. Kilpatrick's counsel argued that mitigating circumstances existed. The trial court's judgment recites that it is based on the jury's findings and the applicable law.

Kilpatrick cites a host of cases in which the conduct found against the attorney was much more egregious but in which an appellate court approved lesser sanctions. *See e.g. Musslewhite v. State Bar of Texas,* 786 S.W.2d 437, 439 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (attorney, on probation for prior misconduct, *suspended for three years* for knowingly violating terms of probation by soliciting accident victims and accepting new employment when prohibited from doing so); *Hebisen v. State,* 615 S.W.2d 866, 867 (Tex.Civ.App. [1st Dist.] 1981) (attorney *suspended for three months* for falsely telling two separate clients that suit filed, thus, resulting in limitations bar and for re-

fusing to return either clients' money or file until grievance filed); *Howell v. State,* 559 S.W.2d 432, 433–34 (Tex.App.—Tyler 1977, writ ref'd n.r.e.) (attorney *reprimanded* for filing divorce suit when he knew another divorce suit involving same parties was pending in another court, for not telling judge of other case, and for refusing to answer a question at contempt hearing when ordered by the judge); *Archer v. State,* 548 S.W.2d 71, 72–73 (Tex.Civ.App. [8th Dist.] 1977) (attorney *suspended for two years* for depositing client funds in his own account for own use and for attempting to get client to sign false affidavit); *Galindo v. State,* 535 S.W.2d 923, 925 (Tex.App.—Corpus Christi 1976, no writ) (attorney *suspended for one year* for misapplying and commingling client's funds and for lying to grievance committee); *State v. Baker,* 539 S.W.2d 367, 369 (Tex.Civ.App. [3d Dist.] 1976) (attorney received *three reprimands* for purchasing property at sheriff's sale and using property to secure further compensation for himself without notice to, or consent of, client); *Ingram,* 511 S.W.2d at 252–53 (attorney *suspended for three years* for misappropriating client's funds and for lying under oath to grievance committee); *State v. Pevehouse,* 483 S.W.2d 565, 565–66 (Tex.App.—Eastland 1972, writ ref'd n.r.e.) (attorney *suspended for one year* for embezzling $2,500.00 of client's funds).

In the instant case, Kilpatrick was not convicted of a crime. He did not misappropriate, commingle, or embezzle client funds; fail or refuse to return client property; forge a document; or lie to a court, grievance committee or client. Furthermore, there is no evidence that Kilpatrick has ever had a grievance filed against him, much less been disciplined, in his eighteen years of practice. More importantly, we cannot say what influence the improper barratry finding had on the trial court's assessment of punishment where as here, the punishment was not segregated for each count of misconduct. *See Smith v. State,* 490 S.W.2d 902, 912 (Tex. App.—Corpus Christi 1972, writ ref'd n.r.e.). While we strongly disapprove of Kilpatrick's conduct, there is no support in the jurisprudence of this State for a sanction of disbarment based on a judgment of disbarment that is so heavy as to constitute an abuse of discretion. *Ingram,* 511 S.W.2d at 253. We sustain point of error six. Accordingly, we reverse the judgment of the trial court and remand to that court for a new trial.