John W. L. **HICKS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 55.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Dec. 6, 1967.

Rehearing Denied Jan. 3, 1968.

C. C. Divine, Houston, for appellant.

Glynn W. McDonald, Gay Brinson, Jr., Houston, for appellee.

TUNKS, Chief Justice.

This is a disbarment proceeding.

The State of Texas, acting by and through members of the Grievance Committee of the State Bar of Texas for the 22nd District of Texas, filed the suit seeking the disbarment of John W. L. Hicks, a licensed attorney of the State of Texas. A trial was had before a jury and resulted in a judgment of disbarment. The defendant, Hicks, appeals, contending that there was no evidence of fraud or malpractice on his part, that the evidence was insufficient to support the jury's findings, that the jury's findings were against the weight of the evidence so that the judgment of the trial court should be reversed and judgment here rendered in his favor, or, in the alternative, that the judgment of the trial court be reversed and the case be remanded for further trial.

One of the former clients of Hicks, whose complaint against him was a subject matter of this suit, was named Mrs. Gaines. She testified that on December 31, 1955, she, at the request of her doctor, entered a hospital for treatment. While in the hospital, she lost a baby and underwent an operation. She was discharged from the hospital in April of 1956. On May 27, 1958, she conferred with the defendant, Hicks, concerning a malpractice suit to be filed in her behalf because of the treatment she received while

she was in the hospital. On that occasion, Hicks accepted a fee of $100.00 which she paid him. In January, 1959, she paid Hicks an additional $125.00. On many occasions subsequent to her original employment of him in May, 1958, Hicks told her that her lawsuit had been filed. Those statements were false. The lawsuit was not filed until August 3, 1960, after complaint had been made against Hicks.

Hicks testified that the original agreement between him and Mrs. Gaines was to the effect that she should pay him $250.00 to investigate her claim to determine whether it was or was not a valid one. He further testified, in substance, that he believed the Statute of Limitations had not run at the time of his acceptance of employment, nor at the time of his filing the lawsuit because the full extent of the injuries suffered by Mrs. Gaines was not then known.

The jury, in response to special issues, found that Hicks represented to Mrs. Gaines that he had filed the lawsuit before such suit was actually filed; that such conduct was malpractice as that term was defined by the court; that such misrepresentations constituted fraudulent conduct, as that term was defined by the court; that such misrepresentation constituted dishonorable conduct, as that term was defined by the court; and that the failure of Hicks to file the lawsuit until August 3, 1960, was malpractice.

Another of the complainants against Hicks, a Mrs. McGruder, testified that she went to Hicks in 1960, to hire him to get a divorce for her. Hicks told her that he would charge her $125.00 to represent her in her divorce case. He told her that it would take about two months to get the divorce. She did not have the money with which to pay his entire fee at the time, but she made weekly payments until the entire $125.00 had been paid sometime during the year 1961. On a number of occasions, Hicks told her that the divorce had been filed, when, in fact, it had not been.

Hicks neither got the divorce for her, nor returned the $125.00 she had paid him.

Although the record is not entirely clear on the matter, it appears that the petition for divorce for Mrs. McGruder was filed by Hicks after she had made a complaint of him to the Grievance Committee, and that the suit was ultimately dismissed for want of prosecution.

Hicks testified that the original agreement between him and Mrs. McGruder was to the effect that she should pay him a fee of $250.00 to represent her, that the reason he did not file the lawsuit was because she never did pay the full fee and she refused to cooperate with him in getting a waiver of citation signed by her husband. He also testified that he himself undertook to locate the husband and was unable to do so and that Mrs. McGruder refused to advance the money with which to pay the cost of citation by publication.

The jury found that Hicks falsely told Mrs. McGruder that he was actively prosecuting the suit for divorce; that such misrepresentations were dishonorable conduct, fraudulent conduct and malpractice; and that the failure of Hicks to prosecute Mrs. McGruder's divorce constituted malpractice.

Another of the complainants, a man named Hardy, testified that he employed Hicks to file suit for divorce in his behalf and to get custody of his child. He testified that the agreement was to the effect that he should pay Hicks a fee of $125.00 for his services in the proceeding. He, too, did not have the money with which to pay his entire fee in advance, but ultimately paid all of it by the week. Hicks told him the suit for divorce had been filed, when, in fact, Hicks had filed no such suit for him. Shortly after he employed Hicks, Hardy's wife filed suit for divorce. At an ancillary proceeding and on advice of Hicks, Hardy agreed to the entry of an order giving his wife the custody of his child and providing for support payments. After that order was entered, the wife

dismissed her suit for divorce. Hicks never filed suit for him or returned his fee.

Hicks testified that the agreement was to the effect that Hardy should pay him a fee of $250.00, that he did not deem it necessary to file suit in behalf of Hardy, nor to file any cross-action in the suit filed by the wife.

The jury found that Hicks falsely represented to Hardy that he, Hicks, had filed his divorce suit; that such false representations constituted malpractice, fraudulent conduct and dishonorable conduct; and that Hicks' failure to file the suit constituted dishonorable conduct and malpractice.

Another of the complainants against Hicks was a Mrs. Johnson. The evidence showed that in 1960, some equipment in a cafe being operated by Mrs. Johnson was taken by the sheriff under a writ of sequestration. She employed Hicks to get her property back for her. Her testimony was to the effect that Hicks charged her $100.00 in connection with getting her property back and an additional $50.00 "to file the complaint." She paid him $40.00 on January 10, 1960; $60.00 on January 13, 1961; and $50.00 on May 5, 1962. Again, the record is not entirely clear, but it appears that the writ of sequestration issued out of a suit that was filed in the Justice Court of Harris County, Texas. Hicks represented Mrs. Johnson in the suit pending in the Justice Court and prevailed in her behalf. An appeal was taken to the County Court and the appeal was subsequently dismissed. On February 28, 1963, Hicks, as attorney for Mrs. Johnson, filed suit in the County Civil Court at Law No. 1 against the principal and surety on the sequestration bond. The surety on the bond was an attorney and at the request of Hicks, filed an answer without any citation having been served on him. Hicks did not cause the citation to be issued and served upon the principal on the bond. No such citation had been issued or served as of the date of this cause in the trial court, April 17, 1967. An examination of the petition filed by Hicks in the County Court case leaves it difficult to determine the nature of the cause of action, if any, stated therein, as to whether it is a suit for the wrongful taking of property or a suit on the sequestration bond. It is therefore difficult to tell when the cause of action accrued or which statute of limitations would be applicable. Nevertheless, whether the two year statute or the four year statute be applicable, it had clearly been barred by the time this case was tried in the trial court.

Hicks justified his conduct in this respect in two ways: first, he said he thought the filing of the lawsuit would toll the running of the statute of limitations without the necessity of getting a service of citation on the defendant principal on the bond; secondly, he contended that the principal was insolvent so that a judgment against her would not be collectable.

The jury found that the failure of the defendant, Hicks, to file suit in behalf of Mrs. Johnson against the principal and surety on the sequestration bond until February 28, 1963, constituted malpractice, and that the failure to secure service of citation on the principal also constituted malpractice.

In its charge to the jury, the court submitted the following definitions:

"By the term 'malpractice' as used in this charge is meant the intentional failure to perform a duty owed by an attorney to his client, and may consist of an act, omission or concealment of an attorney with reference to matters in which he has accepted employment.

"By the term 'fraudulent conduct' as used in this charge is meant an act, omission, or concealment done, made or affected as an attorney with a purpose, design or intent to carry out fraud or wrong.

"By the term 'dishonorable conduct' as used in this charge is meant the doing intentionally of some act, or acts in the

discharge of his professional duty, which an attorney endowed with ordinary sense of honor would not have done, or the intentional failure to do that which under the circumstances such an attorney would have done."

Definitions in the same language were discussed in Rowland v. State, Tex.Civ. App., 55 S.W.2d 133, writ dismd. The definition of "malpractice" was held to be erroneous because the attorney charged with malpractice might not have known what duty he owed, thus permitting a conviction for negligence or error in professional judgment. However, the court held that the definitions of "fraudulent conduct" and "dishonorable conduct" to be correct and that jury findings against the defendant on those issues as to which those definitions applied, supported a judgment suspending the defendant attorney.

Appellant requested the trial court to submit a special issue in the following language:

"SPECIAL ISSUE NO. A

"Do you find from a preponderance of the evidence that at the time of the dealings between the defendant and Mrs. Gaines he acted in good faith?"

The trial court refused to submit the requested issue. Other special issues in the same general language, but relating to his dealings with other complaining clients, were requested and refused. Appellant, by point of error, challenges the trial court's refusal to submit these issues.

■■ The refusal to submit the requested issues was not error. The issues submitted by the court (at least those relating to "fraudulent conduct" and "dishonorable conduct") when considered along with the definitions given, constituted a submission of issues as to the good faith of the defendant and placed the burden on the plaintiff to prove the absence of good faith.

Under those circumstances, good faith did not constitute an affirmative defense of such a character that defendant was entitled to have the submission of defensive issues thereon. Furthermore, if the issue of the defendant's good faith was to be considered an affirmative defense, the court properly refused to submit the requested issues because the defendant did not plead any such defense.

■ The appellant cites the case of Cook v. Irion, Tex.Civ.App., 409 S.W.2d 475, no writ history. That was a case wherein the recovery of damages was sought against an attorney because of his alleged malpractice. The case holds that an attorney should not be liable for an error in judgment if he acts in good faith. With such a holding we agree. That might exonerate the appellant from any professional misconduct in accepting a fee from Mrs. McGruder when her medical malpractice case was already barred by limitation and in failing to get service of citation on one of the defendants in Mrs. Johnson's case. The appellant's lack of understanding of the law as to the Statute of Limitations was not, of itself, malpractice, but the rule announced in Cook v. Irion, supra, would not furnish any basis for excusing the specific false statements made by appellant to his clients, nor his complete failure to file lawsuits for some of them from whom he accepted fees to do so.

■ The evidence, as above summarized, was sufficient to support the jury's findings of fact. Those findings, considered in the light of the trial court's definitions of "malpractice," "fraudulent conduct" and "dishonorable conduct" constituted professional misconduct as defined in Article XII, Sec. 8 of the State Bar Rules. The trial court properly rendered judgment disbarring appellant in accordance with Article XII, Sec. 28 of the State Bar Rules. That judgment is affirmed.