STATE BAR of Texas, Appellant,

v.

John W. O'DOWD, Appellee.

No. 1611.

Court of Civil Appeals of Texas, 14th Dist.

July 6, 1977.

Wayne H. Paris, Asst. Gen. Counsel, State Bar of Texas, Austin, for appellant.

John W. O'Dowd, Houston, for appellee.

CIRE, Justice.

This appeal is from a judgment setting aside a formal reprimand administered by the State Bar of Texas.

Appellee John W. O'Dowd filed this suit under article XII, section 16(b) of the State Bar Rules (1973) to set aside a formal reprimand administered by the Grievance Committee of District 4 of the State Bar of Texas. The reprimand stated that O'Dowd was to appear and represent David Myrick, Jr. in a contempt action pending in the Court of Domestic Relations No. 3 of Harris County, but that he failed to appear and did not render any meaningful or worthwhile

services in that proceeding. The State Bar answered and brought a cross-claim alleging in two counts that O'Dowd violated the Code of Professional Responsibility, article XII, section 8 of the State Bar Rules. Count one alleged he violated Disciplinary Rule (DR) 6–101(A)(3) and DR 1–102(A)(1), (4), (5), and (6) in that he knowingly and willfully neglected a legal matter entrusted to him. These rules provide:

DR 1–102. Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

\* \* \* \* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 6–101. Failing to Act Competently.

(A) A lawyer shall not:

\* \* \* \* \* \*

(3) Willfully or intentionally neglect a legal matter entrusted to him.

The second count averred he violated DR 7–101(A)(2) and DR 1–102(A)(1), (4), (5), and (6) in that he knowingly and willfully neglected to carry out a contract of employment entered into with his client, Myrick, for professional services. Disciplinary Rule 7–101(A) provides:

(A) A lawyer shall not intentionally:

\* \* \* \* \* \*

(2) Fail to carry out a contract of employment entered into with a client for professional services . . . . .

The State Bar prayed the court discipline O'Dowd for these breaches of the Code of Professional Responsibility.

Trial was to a jury. Myrick testified that he contacted O'Dowd, his friend and neighbor, in 1974 to represent him in an attempt to have the amount of Myrick's child support payments lowered. At that time Myrick was already represented in other phases of his domestic relations litigation by other counsel. In May or June of 1975, Myrick asked O'Dowd to serve as his "lead" counsel. Myrick's former wife's counsel had set a contempt hearing for failure to pay child support for July 11, 1975 and, in June, Myrick asked O'Dowd to represent him at the hearing in an attempt to have the amount of his child support payments reduced.

Myrick further testified that, the week before the hearing, he tried contacting O'Dowd, but was told no one in his office knew his whereabouts. Myrick then contacted another attorney, D. Graham Moore, to represent him at the hearing. Moore agreed to represent Myrick in this matter only if a continuance was granted at the hearing. The continuance was granted because O'Dowd was not available and, in February 1976, with Moore as counsel, the amount of child support was lowered. Myrick stated that he wanted the child support payments reduced as soon as possible and that, as a result of O'Dowd's failure to appear at the July 11 hearing, he suffered $1400 in damages.

O'Dowd testified that he had often given Myrick his opinion and assistance on legal matters. When Myrick asked O'Dowd to serve as his counsel at the July 11 hearing, the contempt motion was the only matter set for the hearing and was Myrick's primary concern at the time. O'Dowd said they speculated that Myrick's former wife was to move back to Florida at the end of the summer and would drop the matter. As to this contempt action, O'Dowd testified that he hoped to obtain a postponement from July 11. Shortly before July 11, O'Dowd's financial problems "started crashing down" on him. Extremely depressed and unable to cope with his problems, he left town and stayed away without contacting even his wife. After some days he called his wife and asked her to have his associate, Schindler, take care of his cases and get them reset. Schindler then, in conjunction with Myrick's other counsel, obtained a continuance.

The case was submitted to the jury on two special issues inquiring (1) whether

O'Dowd, on or about July 11, 1975, willfully neglected a legal matter entrusted to him by Myrick, and (2) whether O'Dowd, on or about July 11, 1975, willfully failed to carry out a contract of employment entered into with Myrick. The jury did not find O'Dowd liable on either issue, and the court entered judgment setting aside the formal reprimand and ordering that the State Bar take nothing by its cross-action.

■ The State Bar appeals that judgment on six points of error. Its first point asserts that there was no evidence presented by O'Dowd that the formal reprimand was unwarranted. Under this point the State Bar contends that, because a reprimanded attorney must bring suit to set the reprimand aside, he is the plaintiff and has the burden of proof. The State Bar bases this argument upon the language of article XII, section 16(b) providing for appeal of reprimands:

> If the accused shall deem the reprimand unwarranted, he may, within ten days after delivery or mailing thereof, file suit in the district court of the county of his residence to set the same aside, failing which, the reprimand shall become final . . . ..

The State Bar construes the clause "failing which, the reprimand shall become final" as a reference to the setting aside of the reprimand. Thus construed, section 16 would make the reprimand final if the attorney was unsuccessful in his suit to set it aside and the attorney would have the burden of proving that the reprimand was unwarranted. However, we construe the "failing which" clause to have reference to the filing of the suit to set aside the reprimand. Construed in this way, section 16(b) provides that the reprimand shall become final if a suit to set it aside is not filed within ten days after delivery or mailing thereof. The only burden incumbent upon the attorney is to timely file suit to set the reprimand aside. The suit itself is a trial de novo. *State Bar of Texas v. Semaan*, 508 S.W.2d 429, 433 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.). The State Bar thus had the burden of proof on its allegations that O'Dowd was guilty of professional misconduct. The point is overruled.

■ The second point asserts the trial court erred in failing to hold that the State Bar established professional misconduct in violation of DR 1–102(A)(4), (5), and (6) as a matter of law. We disagree. The State Bar offered no evidence that O'Dowd had been dishonest, fraudulent, or deceitful in his dealings with Myrick, or that he had made any misrepresentations to Myrick. Nor did the evidence establish as a matter of law that O'Dowd's conduct was prejudicial to the administration of justice or that it adversely reflected on his fitness to practice law.

■ Points three and four contend that the jury's answer to the first special issue inquiring whether O'Dowd willfully neglected a legal matter entrusted to him was against the great weight and preponderance of the evidence. The testimony established that Schindler, an attorney working for O'Dowd, appeared at the hearing in question at O'Dowd's request and obtained a continuance on behalf of Myrick. During this time, O'Dowd testified, he was in a severe state of emotional depression. The jury could have concluded that O'Dowd was unable to perform his obligations and had his associate handle the case. The point is overruled.

■ Points five and six assert that the jury's answer to the second special issue, inquiring whether O'Dowd willfully neglected to carry out a contract of employment entered into with Myrick, was against the great weight and preponderance of the evidence. Again, there was evidence presented that O'Dowd did not neglect the matter which formed the purported contract of employment, but that O'Dowd's associate attended the hearing in O'Dowd's place to obtain a continuance during O'Dowd's emotional disability. The points are overruled.

Affirmed.