The STATE of Texas, Appellant,

v.

Don L. BAKER, Appellee.

No. 12415.

Court of Civil Appeals of Texas, Austin.

July 7, 1976.

Rehearing Denied July 28, 1976.

Davis Grant, Gen. Counsel, State Bar of Texas, Austin, for appellant.

Bob Gibbins, Gibbins & Spivey, Austin, for appellee.

PER CURIAM:

This is an appeal from a disbarment proceeding brought by the appellant, the State Bar of Texas, against appellee Don L. Baker, a practicing attorney. Appellee was charged with violations of the Code of Professional Responsibility when he purchased property on behalf of his client at a sheriff's sale and used that title to secure further compensation for himself without notification to, and the consent of, his client.

Trial was to a jury which found, in essence, that the appellee had acted in good faith and had not engaged in unethical conduct. The court accepted the verdict of the jury and entered judgment exonerating appellee from all charges of professional misconduct except for a violation of Disciplinary Rule 5–107.[1] It was for this violation that the court entered a judgment of reprimand against appellee. Appellant Griev-

---

1. The pertinent parts of DR 5–107, Tex.Rev. Civ.Stat.Ann. art. 12, § 8 (1973) are as follows: "DR 5–107. Avoiding Influence by Others Than the Client.

   (A) Except with the consent of his client after full disclosure, a lawyer shall not:

   (1) Accept compensation for his legal services from one other than his client.

   (2) Accept from one other than his client any thing of value related to his representation of or his employment by his client."

   \* \* \* \* \* \*

ance Committee does not attack the reprimand. Appellant appeals from that part of the judgment exonerating appellee from charges of professional misconduct. We reverse the judgment and remand the cause to the district court.

The facts upon which we base our judgment were mostly undisputed.

Appellee was a partner in the law firm of Baker, Watkins, Ledbetter, Hayden and Ramsey. This firm was employed in January of 1973 by Lester Moore Tank and Supply Company through Dunn and Bradstreet, Inc., to collect a debt owed to the Lester Moore Tank and Supply Company by the Apollo Oil Corporation and one Mason Fargason.

It was determined that it would be necessary to file suit in order to collect the debt. In March, 1973, a status report was sent by appellee's law firm to Dunn and Bradstreet stating the requirements for suit to be filed. These requirements included a $55 advanced cost charge and a $75 noncontingent suit fee or a one-third contingent fee agreement in lieu of the noncontingent suit fee. It was noted in the report that a reasonable "net suit fee" might be charged.

The law firm then received a check from Dunn and Bradstreet for the $55 advanced costs in May, 1973. The $75 noncontingent suit fee was never received.

Suit was filed against Mason Fargason and Apollo Oil Corporation in July, 1973, and a default judgment was taken against both defendants in September of 1973. In December of 1973, a writ of execution was forwarded to the Sheriff of Karnes County, Texas, with instruction to sell all the judgment debtor's interest in a gas well in Karnes County.

On February 5, 1974, the sheriff's sale was held and an employee of the appellee's law firm purchased the property with a high bid of $1.00.

On February 14, 1974, the appellee received a letter from the County Attorney of Karnes County notifying him that there was a defect in the publication of the notice for sale by the sheriff.

In February, 1974, appellee's law firm sent a status report to Dunn and Bradstreet, Inc., notifying them of the purchase and of the defect.

On April 1, 1974, the sheriff executed a sheriff's deed conveying to "Don L. Baker, Trustee, his heirs and assigns" that interest purchased at the sheriff's sale held in February, 1974.

On April 10, appellee met with Mason Fargason, the judgment debtor. At this meeting, Fargason tendered to appellee a cashier's check for $1,082.49, which was the entire amount of the judgment, including $55.00 court costs, interest of $30.09, and court-awarded attorney's fees of $300.00. Appellee accepted the check and, in addition, proposed to prepare a release of the judgment and to convey an undivided two-thirds working interest in the gas well purchased at the sheriff's sale to the designee of Fargason. By the terms of this settlement agreement, appellee was to keep a one-third working interest in the gas well and apply all division order payments from the interest until the sum of $4,250 was received. Of the $4,250 to be obtained from the production payments, $2,000 was to be a net suit fee to be paid to appellee. The remainder of the money was to go toward the payment of two nonjudgment claims by other clients of appellee against Fargason that appellee carried in his dormant files. The interest in the gas well retained by appellee was to be reconveyed to Fargason only after the sum of $4,250 had been received.

On April 11, 1974, appellee forwarded a status report to Dunn and Bradstreet, Inc., in which he stated, "Have recovered $752.40 principal in full . . . and $55 court costs. Have deducted $250.00 commission and enclose check for $556.60 . . ." At this point appellee had collected $550.00 in attorney's fees, $250.00 as a contingent fee and another $300.00 awarded in the judgment against Mason Fargason.

On April 16, 1974, appellee executed a supplemental Division Order as "Don L. Baker, Trustee." At least five payments

were received by the appellee after that date. These payments, amounting to $1,844.14, were deposited by appellee in his personal account and not into a separate "trust account."

Appellee testified that the only notice given to his client, Lester Moore, as to the final disposition of the case and the nature of the fees received was in the above-mentioned letter to Dunn and Bradstreet from appellee's law firm noting a recovery of $752.40 plus $55 in court costs. Appellee did not notify his client, Lester Moore, that in addition to his commission, he had received court-awarded attorney's fees from Mason Fargason and a $2,000 "net suit fee" to be withheld from the production payments of this interest or that he had the nonjudgment claims of two other clients from his dormant files paid.

Appellee testified that he managed to have his "net suit fee" of $2,000 paid by the judgment debtor without any negotiation with his client. Indeed, appellee admitted that, had he negotiated the net suit fee with his client, the fee would have been less than the $2,000 which he charged the judgment debtor. Out of the "net suit fee" of $2,000 contracted for by appellee, he actually received $1,844.14 paid by virtue of such production payments.

The matter of appellee's use of the title acquired as trustee for his client, Lester Moore, was brought before the Grievance Committee of District Number Nine. The Grievance Committee took action by bringing a formal complaint against appellee. This complaint, subsequently amended, was filed in April, 1975, in the district court of Travis County, Texas, charging appellee with a violation of Disciplinary Rule 1–102(A)(1) and eight other specific violations of the Code of Professional Responsibility.

The charge contained seven special issues, all of which the jury answered unfavorably to appellant. In response to special issue number one, the jury failed to find that appellee engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation with reference to his client, Lester Moore. Likewise, the jury, in answering special issue number two, failed to find that Baker intentionally engaged in conduct that was prejudicial to the administration of justice. By their answer to special issue number three the jury failed to find that appellee intentionally engaged in conduct adversely reflecting upon his fitness to practice law. In response to special issue number four the jury failed to find that appellee intentionally failed to disclose information to his client, Moore, which an attorney endowed with ordinary ability and an ordinary sense of propriety would have disclosed to his client under the same or similar circumstances. In answering special issue five, the jury found that on or about April 10, 1974, appellee acted in "good faith" in his attorney-client relationship with Moore, and his agent, Dunn and Bradstreet. The jury answered special issue six that appellee's acceptance of compensation from Fargason did not adversely influence his representation of his client, Moore. Finally, the jury refused to find that the funds from the production payments which appellee deposited in the bank belonged to his client, Moore.

Appellant Grievance Committee filed a motion for judgment *non obstante veredicto*. In general, the grounds for that motion were that professional misconduct had been shown as a matter of law, that the only disputed questions were questions of law, and that the jury's findings should be disregarded.

The court overruled the motion for judgment *non obstante veredicto*, except for the ground which urged a violation of Disciplinary Rule 5–107. The court accepted the verdict of the jury and found appellee not guilty of professional misconduct, except insofar as he received compensation from someone other than his client without full disclosure.

On the basis of the jury's findings, the court refused to disbar or suspend the appellee and entered judgment that appellee be reprimanded.

Appellant is before us on six points of error. Appellant's first three points of error complain of the error of the trial court

in failing to hold as a matter of law that appellee violated three additional Disciplinary Rules. First, appellant urges that Disciplinary Rule 5–103 was violated in that appellee acquired a proprietary interest in the cause of action or subject matter of the litigation when he took for his own use the production payments from the judgment debtor's gas well purchased by appellee at the sheriff's sale. Furthermore, he violated that rule when he entered into a "settlement agreement" with the judgment debtor without his client's knowledge and consent. Second, appellant urges error of the court in failing to hold as a matter of law that appellee violated Disciplinary Rule 7–101(A)(3) by intentionally prejudicing or damaging his client when he willfully failed to advise his client of the value of the property which he purchased at the sheriff's sale and of the terms of the settlement agreement of April 10, 1974. Third, appellant contends the court erred in failing to hold as a matter of law that appellee violated Disciplinary Rule 9–102(A), (B)(1), (3), and (4) by receiving for his own use the production payments obtained as a result of the settlement agreement of April 10, 1974, while allegedly acting as trustee for his client.

■ In our judgment the trial court erred when it overruled appellant's motion for judgment *non obstante veredicto.* One ground in appellant's motion for judgment *non obstante veredicto* [2] was that appellee as a matter of law violated the Code of Professional Responsibility, as set forth in Article XII, Section 8 of the Rules Governing the State Bar of Texas, Vol. 1A, Vernon's Civil Statutes, when the appellee agreed to take the $2,000 production payment in the settlement agreement of April 10, 1974, and when he actually received the $1,844.14 paid by virtue of such production payment.

Disciplinary Rule 5–103 is entitled: "Avoiding Acquisition of Interest in Litigation" and reads:

"(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses.

(2) Contract with a client for a reasonable contingent fee in a civil case."

■ This directive is clear and it is equally evident that it was breached by appellee as a matter of law by the course of his conduct. Canon 5 of the State Bar Rules is entitled: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." Ethical Consideration EC 5–1 states: "The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interest of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client." Although the canons of ethics and their ethical considerations set out in the Rules are not binding upon this Court, those canons are highly persuasive and are due our utmost consideration.

■ The problem of attorneys acquiring interests in litigation apart from that of their clients is not new. In *Douglass v. Blount,* 95 Tex. 369, 67 S.W. 484 (1902), the Supreme Court discussed problems associated with attorneys purchasing property at sales under whose process they controlled. There the Court stated a limited exception to the earlier rule that an attorney was strictly forbidden to purchase property at such sales. Courts will severely scrutinize but will uphold such a sale to an attorney when made under circumstances of fairness and when the attorney either had the *consent* of his client to purchase the property *after full disclosure* or paid an amount sufficient to discharge the debt. When these

---

**2.** In its motion appellant contended that appellee, as a matter of law, had violated D.R. 1–102(A)(4); D.R. 1–102(A)(5); D.R. 1–102(A)(6); D.R. 5–103; D.R. 5–107(A)(1); D.R. 7–101(A)(3); D.R. 7–102(A)(3); D.R. 9–102(A), (B)(1), (3), and (4).

requirements have been met, the client has in no way been harmed and has, indeed, benefited by having an additional bidder at the sale.

■ In the case at bar, appellee purchased the property at the sheriff's sale for $1.00 and as "trustee." The apparent purpose of the purchase was to secure a means to satisfy his client's claim; however, that purpose had been met when the judgment debtor offered to pay the entire judgment claim including court costs and attorney's fees. Moore had contracted with appellee to bear the costs of recovering the debt. As long as appellee acted as trustee for his client, Moore, he had no proprietary interest in the subject matter of the litigation. When appellee secured the property at the sheriff's sale and when he began to act in a capacity other than as trustee for his client, he violated DR 5–103 in spirit and in fact. Disciplinary Rule 5–103 is a preventive rule which does not require a showing of actual harm to a client. Instead, it prohibits attorneys from acquiring proprietary interests in the subject matter of litigation in order to avoid the possibility of adverse influence upon the attorney and harm to the client.

Appellee's primary duty was to his client, Lester Moore. In extracting the settlement agreement from the judgment debtor, appellee exceeded the terms of his employment contract. When he entered into this agreement his client received compensation for only two-thirds of the original debt while appellee acquired additional compensation for himself (and allegedly acquired the recovery of two nonjudgment claims from his dormant files). The foreclosure and the subsequent agreement between appellee and the judgment debtor was unknown to Moore and resulted in appellee's recovering[3] a sum substantially greater than the amount of the original debt in suit.

This recovery arose from, and continued to be, an integral part of the original suit. Appellee contended that no ethical considerations were pertinent at the time of the settlement agreement in question because the attorney-client relationship between appellee and Moore had been terminated at that time. We reject this contention because the attorney-client relationship had not terminated.

■ If there is any merit to appellee's contention that there is a custom[4] among attorneys who specialize in commercial law to attempt to acquire from the debtor additional attorney's fees in collection efforts, including the net suit fees, such a custom cannot be considered a defense to the course of conduct complained of in this suit. A net suit fee is usually charged when the attorney must use extraordinary efforts to collect the debt. In this case, if appellee believed his efforts justified payment of a net suit fee, his responsibility was to fully inform his client, Lester Moore, of his efforts and the present status of the file, and to negotiate an agreement with his client on the amount of additional compensation to be paid, and the manner and source of payment. Instead of consulting with his client, appellee retained title to the debtor's property for the purpose of collecting his "net suit fee." Under these circumstances, appellee cannot rely on this trade custom as a mitigating factor in the trial court's consideration of punishment.

Appellant's second point of error is that the trial court erred in failing to hold that appellee violated DR 7–101(A)(3) as a matter of law. Disciplinary Rule 7–101(A)(3) is entitled: "Representing a Client Zealously" and the relevant part is as follows:

"(A) A lawyer shall not intentionally:

\* \* \* \* \* \*

---

3. Appellee contends that it is uncontroverted that Moore was notified on February 21, 1974, that his law firm had been high bidder at the sheriff's sale to dispose of the debtor's interest in a gas lease in Karnes County and also, that the debtor had been in contact with appellee's law firm concerning payment of the judgment.

4. For a discussion of custom in this regard see: *Employers Casualty Company v. Tilley,* 496 S.W.2d 552 (Tex.1973).

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

The gravamen of appellee's violation of this rule is his failure to notify his client of the value of the property purchased "as trustee" and of the terms of the settlement agreement. As a result of this conduct by appellee, his client never received full payment on the debt of $752.40.

■ The relationship between attorney and client has been held to be one of *uberrima fides*. *Smith v. Dean*, 240 S.W.2d 789 (Tex.Civ.App.1951, no writ). This has been described as: "The most abundant good faith; absolute and perfect candor or openness and honesty; the absence of any concealment or deception, however slight."[5]

■ We hold that Moore, as a matter of law, was entitled to know in detail whatever recovery appellee was able to obtain from the judgment debtor. It is true that appellee had an employment contract with Moore which set the compensation at one-third of the recovery. Nonetheless, Moore was still entitled to full recovery if such was possible. The failure to present this information to Moore was in itself harmful and prejudicial to his best interests.

Appellant's third point of error is that the district court erred in failing to enter judgment, as a matter of law, that appellee violated Disciplinary Rule 9–102. Disciplinary Rule 9–102 is entitled: "Preserving Identity of Funds and Property of a Client" and provides in part as follows:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein . . .

\* \* \* \* \* \*

"(B) A lawyer shall:

"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

\* \* \* \* \* \*

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

■ Proving a violation of Disciplinary Rule 9–102 necessarily involves proof that Moore owned the production payments paid over to appellee. Appellant failed to make that proof. In that connection the jury failed to find that ". . . the funds from the production payment Don Baker deposited in his bank account *belonged* to his client, Lester Moore." (Emphasis added) Appellant does not directly attack that jury finding by any point of error, nor is there any discussion under point of error three contending that the evidence conclusively showed that the funds belonged to the client.

■ The client might have had some character of claim to that part of the production payment which represented the contingent fee which he agreed to pay appellee. We fail to understand, however, that the client had any right or claim to the balance of the sum represented by the production payments.

■ In connection with point of error three, appellant also asks this Court to impose a constructive trust, in favor of the client, upon the proceeds received by appellee from the production payments. With respect to that contention, one problem, among others, is that appellant asked for no such relief in the trial court, and appellant is, of course, precluded from obtaining that relief in this Court.

**5.** *Black's Law Dictionary* 1690 (4th ed. 1968).

Because of our disposition of this appeal, it is not necessary to answer the balance of appellant's points of error.

Appellee attacks the judgment by a cross-point. In the cross-point appellee contends that the district court erred in granting appellant's motion for judgment *non obstante veredicto* wherein it was found that appellee was guilty of professional misconduct, for the reason that the jury finding of appellee's good faith was a complete defense.

An attorney, in a malpractice or a disbarment suit, is not liable for an error in judgment if he acts in good faith and in an honest belief that his advice and his acts are well founded and in the best interest of his client. *Cook v. Irion*, 409 S.W.2d 475 (Tex.Civ.App.1966, no writ), *Hicks v. State*, 422 S.W.2d 539 (Tex.Civ.App.1967, writ ref'd n.r.e.). The good faith defense should apply only in those situations where the attorney exercises his best judgment believing that his decision is in the best interest of his client. *Hicks v. State, supra.* In the April 10 transaction, appellee possessed all the facts, and he accomplished exactly what he set out to do. For example, he knew by that transaction he was to receive compensation for legal services from one other than his client. Moreover, appellee's effort to acquire additional compensation, over and above that effort required to obtain recovery for his client, was expended strictly for his own interest. The good faith defense is not available to appellee, since in our view no such judgment call in the interest of his client was involved in the transaction.

Applying this rule to the facts in the case at bar, we are of the opinion that the district court properly disregarded the jury's answer of good faith. The cross-point is overruled.

Whether an attorney, upon proper proof of violation of the Disciplinary Rules, should be disbarred, suspended, or reprimanded, is a matter addressed to the sound discretion of the trial court. *State v. Ingram*, 511 S.W.2d 252 (Tex.1974), *Smith v. State*, 490 S.W.2d 902 (Tex.Civ.App.1972, writ ref'd n.r.e.). With respect to the assessment of punishment, the role of the appellate courts is to determine whether or not the particular assessment of punishment by the district court was an abuse of discretion.

We have determined that, as a matter of law, appellee violated Disciplinary Rules 5–103 and 7–101(A)(3). Appellant did not appeal the assessment of reprimand for appellee's violation of Disciplinary Rule 5–107.

The judgment is reversed and the cause is remanded to the district court to consider, in its discretion, the assessment of punishment against appellee for his violation of Disciplinary Rules 5–103 and 7–101(A)(3). *State v. Ingram, supra, Smith v. State, supra.* In its discretion the district court may assess one punishment for the violation of the two Disciplinary Rules, or the court may assess a separate punishment for the violation of each Disciplinary Rule. Also, a violation of more than one of the Disciplinary Rules may be considered together to assess a greater penalty if, in the court's view, the conduct in its entirety constitutes a more serious infraction than the breach of each individual Disciplinary Rule. See also *Galindo v. State*, 535 S.W.2d 923 (Tex.Civ.App.1976, no writ).

Reversed and Remanded.