**Charles Ben HOWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1060.**

Court of Civil Appeals of Texas, Tyler.

Nov. 23, 1977.

Rehearing Denied Dec. 29, 1977.

Tom S. McCorkle, Jr., Dallas, Waggoner Carr, Austin, Melvyn Carson Bruder, Dallas, for appellant.

Robert C. Bass, Jr., Asst. Gen. Counsel, Austin, for appellee.

McKAY, Justice.

This is a disbarment suit brought by the State of Texas, acting by and through its Grievance Committee for the Sixth District of the State Bar of Texas, appellee, against Charles Ben Howell, appellant, alleging that certain acts and conduct of appellant constituted malpractice, fraudulent and dishonorable conduct in willful violation of the Code of Professional Responsibility which warranted the disciplining of appellant under the State Bar rules. The prayer of appellee asked that appellant be disbarred, suspended or reprimanded. Trial was had before a jury, and the trial court disregarded part of the verdict and rendered judgment that appellant was guilty of professional misconduct in engaging in conduct prejudicial to the administration of justice, and that appellant be reprimanded. Appellant has perfected his appeal.

Appellant is a duly licensed attorney of the State of Texas and a member of the State Bar of Texas. It was alleged in appellee's pleadings that appellant appeared before Judge Dee Brown Walker, 162nd District Court, sitting for the Judge of Domestic Relations Court No. 2, Dallas County, and presented Judge Walker with the file of a bill of review and divorce proceeding from Domestic Relations Court No. 2 and moved for a default judgment on the grounds that no answer had been filed. It was further alleged that appellant did not tell Judge Walker that there was another case pending between the same parties for a divorce in Domestic Relations Court No. 3, and that Judge Dan Gibbs of that court had set a hearing on both cases for the following week, and that appellant had appeared before Judge Gibbs only two days before concerning both cases. Judge Walker rendered a default judgment awarding custody of the minor children. When Judge Walker learned of the facts concerning the case pending in Domestic Relations Court No. 3 he cited appellant for contempt and transferred the matter for a hearing before another judge.

Appellant later appeared before Judge Louis Holland, a retired district judge sit-

ting in Domestic Relations Court No. 3, to determine whether appellant was guilty of contempt of court before Judge Walker. During the hearing appellant became a witness in support of his motion for continuance, and he testified that he had attempted to employ four different lawyers to represent him, and each of them had refused due to alleged fear of prejudice in future cases before Judge Walker. The assistant district attorney representing appellee asked appellant to name the four lawyers he contacted, and appellant refused to do so. Judge Holland then instructed appellant to answer the question and name the lawyers and appellant refused to do so, asked that his motion for continuance be withdrawn, and persisted in his refusal after being advised that he would be held in contempt of court. Judge Holland then ruled that appellant was in contempt of court. [See *Ex parte Howell,* 488 S.W.2d 123 (Tex.Cr.App.1973) for factual statement.]

The present suit is an outgrowth of the contempt matters before Judge Walker and Judge Holland. The trial court submitted the case to a jury on ten special issues.[1] We are concerned in this appeal with issues 9 and 10. In issue 9 the jury found appellant failed to answer a question relating to his motion for continuance when he was instructed by Judge Holland to answer, and failed to find in issue 10 that such conduct was prejudicial to the administration of justice. Upon motion of appellee the trial

judge set aside the jury's answer to issue 10 and disregarded same, holding that issue 10 was a question of law which should be decided by the court. In its judgment the trial court held that, based upon the jury's answer to issue 9, in its opinion appellant was guilty of professional misconduct "in that he did engage in conduct that was prejudicial to the administration of justice." It was further ordered that appellant be reprimanded for his professional misconduct.

■ By his first three points appellant contends that the trial court erred in that appellant was denied due process of law, equal protection of law, and the right of trial by jury because (1) the facts do not indisputably establish the jury verdict to be so clearly wrong that reasonable minds cannot agree to the contrary; (2) the question as to whether the conduct of appellant was prejudicial to the administration of justice is not one of law to be decided by the court only; and (3) the trial court has no power to revise a jury verdict in a punitive or quasi-criminal case. The basic question raised by appellant in these points is whether a finding that conduct is prejudicial to the administration of justice is a fact issue for the jury or a question of law for the court. We hold that it is a function of the court and that the trial court properly disregarded the answer of the jury to issue 10.

Article 12, Sec. 28, State Bar Rules, V.T. C.S., provides in part:

1. "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that on or about the 26th day of May, 1971, at the time he obtained a default judgment in an action pending in Domestic Relations Court Number 2 involving divorce, property, and custody of minor children, Charles Ben Howell did not tell Judge Walker that another action involving the same parties regarding divorce, property, and custody of minor children was pending in Domestic Relations Court Number 3?

"Answer 'yes' or 'no'.
"ANSWER 'No'.
[Issues 2, 3, 4, 6, 7 and 8 not answered according to instructions]
"SPECIAL ISSUE NO. 9
"Do you find from a preponderance of the evidence that Charles Ben Howell failed to an-

swer a question relating to his motion for continuance when he was instructed by Judge Holland to answer?
"Answer 'yes' or 'no'.
"ANSWER 'yes.'
"If you have answered Special Issue No. 9 'yes', and only in that event, you will answer the following Special Issue:
"SPECIAL ISSUE NO. 10
"Do you find from a preponderance of the evidence that when Charles Ben Howell failed to answer a question relating to his motion for continuance which he was instructed by Judge Holland to answer, if you have so found, that he engaged in conduct that was prejudicial to the administration of justice?
"Answer 'yes' or 'no'.
"ANSWER 'no.' "

"If the court shall find from the evidence in a case tried without a jury, or from the verdict of the jury, if there be one, that the defendant is guilty of no professional misconduct, he shall enter judgment so declaring and dismiss the complaint; but if he shall find the defendant guilty, he shall determine whether the party shall be (a) reprimanded, or (b) suspended from practice (in which case he shall fix the term of suspension), or (c) disbarred; and he shall enter judgment accordingly."

As we view Sec. 28 the function of the trial court is (1) to make the actual determination whether the conduct of an attorney constitutes professional misconduct; and if it finds it was professional misconduct, (2) exercise its disciplinary authority. Article 12, Sec. 9, State Bar Rules, V.T.C.S., provides in part that:

"a. Professional misconduct consists of any of the following:

"(1) Misconduct as specified in DR1–102, Code of Professional Responsibility . . . ."

Article 12, Sec. 8, DR1–102, provides in part:

"(A) A lawyer shall not:

. . . . .

"(5) Engage in conduct that is prejudicial to the administration of justice."

The jury found (Issue 9) that appellant refused to answer the question as to the identity of the attorneys he contacted to represent him in his contempt hearing before Judge Holland after being instructed to do so by the court. Issue 10 asks whether such conduct was prejudicial to the administration of justice, to which the jury answered "no." There were no definitions or explanations in the charge (and none requested) to guide the jury in its answers. Appellant argues that *State v. Baker,* 539 S.W.2d 367 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.), is authority for submitting issue 10 to the jury. We disagree. The opinion (Page 371) states that such an issue was submitted to the jury, but nowhere does it approve or disapprove of such issue as being proper.

■ Appellant's contention that the trial court has no power to revise a jury verdict in a punitive or quasi-criminal case is without merit. The trial here was a civil suit, and the trial court was authorized to disregard on its own motion any issue that was immaterial or one which constituted a question of law. Art. 12, Sec. 21, State Bar Rules; *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex.1966); *Grubb v. Grubb,* 525 S.W.2d 38 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.). The case of *Archer v. State,* 548 S.W.2d 71 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.), a disbarment suit, has the following language:

"Appellant contends that the Court's act of disregarding the jury's answer to Special Issue No. 1(a) violated his right of trial by jury as provided in the Code. The provision of the Code is that the accused attorney shall have the right of a trial by jury in the county of his residence. It cannot be given the construction that Appellant places on it, for the Code also says that the Rules of Civil Procedure shall govern, and, under those rules, the Court can disregard an issue. Appellant's contention has been decided otherwise in the case of *State v. Baker,* supra. It was there held that the trial Court erred in not granting the State's motion for judgment non obstante veredicto."

Points 1–A, 1–B, and 1–C are overruled.

■ By his next three points appellant maintains that Article 12, sec. 8, DR1–102(A)(5), State Bar Rules, is vague and indefinite (1) on its face, (2) as construed by the courts of Texas, and (3) as construed and applied in this case, and is unconstitutional because it violates the due process and equal protection clauses of the Constitution of Texas. We disagree. It is undisputed in the record that appellant, in the capacity of a witness, refused to answer a question after instructed to do so by the trial court and after being advised that his failure to do so would result in appellant being in contempt of court. Was such conduct on the part of appellant "prejudicial to the administration of justice"? In our opinion

it was. "Prejudicial" has been defined as tending to injure or impair; detrimental; harmful; hurtful; injurious. 33 Words and Phrases, page 471; Webster's Seventh New Collegiate Dictionary, G & C Merriam Co. 1969. "Administration of justice" has been described thusly: "The administration of justice consists in the trial of cases in the court, and their judicial determination and disposition by orderly procedure, under rules of law, and putting of the judgment into effect." *Massey v. City of Macon*, 97 Ga.App. 790, 794, 104 S.E.2d 518, 521–522 (1958).

■ We do not believe that the language "a lawyer shall not: . . . engage in conduct that is prejudicial to the administration of justice" is so vague and indefinite that it violates the due process and equal protection clauses of the Constitution of Texas. Conduct prejudicial to the administration of justice may consist of any one or more of many acts too numerous to list. See 7 C.J.S. Attorney and Client sec. 23, p. 741, et seq. However, although the State Bar rule may be in general terms, in our opinion conduct which falls within the above definitions is prejudicial to the administration of justice and is professional misconduct.

The Supreme Court of Kansas has written on the question as to whether State Bar Rule DR1–102(A)(5) is vague in *State v. Nelson*, 210 Kan. 637, 639, 504 P.2d 211, 214 (1972):

"With respect to issue 3, respondent argues that the word 'prejudicial' as it appears in DR1–102(A)(5) is unconstitutionally vague and casts a 'chilling effect on First Amendment freedoms'. Respondent's position is unsupported in both instances. The word 'prejudicial' is universally found throughout the legal and judicial system. Specific definitions are found in any dictionary. In *Prunty v. Light Company*, 82 Kan. 541, 108 P. 802, this court, referring to Webster's Universal Dictionary, defined prejudicial as 'hurtful', 'injurious', 'disadvantageous'. It cannot be seriously contended that 'prejudicial' does not sufficiently define

the degree of conduct which is expected of an attorney."

The Supreme Court of Oregon has also addressed the question in *Complaint of Rook*, 276 Or. 695, 556 P.2d 1351, 1357 (1976):

"As for the contention by the accused that the terms of DR1–102(A)(5) are unconstitutionally vague, we believe that as standards of professional conduct they are sufficiently definite for the purpose of a professional disciplinary proceeding. . . . We have previously held that such a proceeding is not a criminal proceeding, and that the technicalities of criminal law, which are properly invoked to safeguard the liberty of citizens, are not necessarily relevant in the investigation of unethical conduct by an attorney. . . ."

We conclude that the conduct of appellant was injurious, hurtful and detrimental to the orderly trial of the case before the court, and such conduct was prejudicial to the administration of justice. These points are overruled.

In his next three points appellant contends that the trial court erred in overruling his plea to the jurisdiction and his alternative plea alleging lack of a competent plaintiff because members of the Grievance Committee were at all material times unsworn, never having taken the oath of office as provided in Article 16, sec. 1, Constitution of Texas. Appellant also filed a motion to dismiss and a motion for directed verdict on the same grounds. The provision in Article 16, sec. 1 of the Texas Constitution reads in part:

"The Secretary of State, and all other appointed officers, before they enter upon the duties of their offices, shall take the following Oath and Affirmation: . . ."

The Legislature by Article 320a–1, V.T. C.S., sec. 4, subdivision (a), provided that "From time to time as the court may seem proper, the Supreme Court of Texas shall prepare and propose rules and regulations for disciplining, suspending, and disbarring attorneys at law; . . ."

Pursuant to the specific legislative grant of power the Supreme Court, in Article 12, State Bar Rules, promulgated rules for disciplining members of the State Bar of Texas, and such rules include the establishing of grievance committees and the appointing of members to those committees.

■ The "office" of a grievance committee member is created by rule promulgated by the Supreme Court of Texas pursuant to a specific statutory act. It was not created by the Constitution of Texas, and the constitutional oath required of officers appointed pursuant to a specific or implied constitutional grant is not required. In *Lopez v. State*, 437 S.W.2d 268 (Tex.Crim.App. 1969), it was held that a special prosecutor was not required to take the constitutional oath of office before appearing in the case. It is specifically pointed out in *State v. Sewell*, 487 S.W.2d 716, 719 (Tex.1972), that "the Grievance Committee is an administrative agency of the Judicial Department and is the arm of the Supreme Court in the discharge of its professional policing duties." Before becoming a licensed attorney every person admitted to practice law takes an oath, Article 309, V.T.C.S., and we hold that when a member of the State Bar of Texas is appointed to a Grievance Committee, such attorney is not required to take the constitutional oath of office. See *Smith v. Grievance Committee*, 475 S.W.2d 396, 399 (Tex.Civ.App.—Corpus Christi 1972, no writ). These points are overruled.

In his last three points appellant maintains that the trial court erred in overruling his plea to the jurisdiction because the Grievance Committee decision to proceed by a formal complaint was not made by a majority vote of the Grievance Committee; that the trial court erred in sustaining appellee's special exception to appellant's pleading under oath that the Grievance Committee members failing to attend a grievance hearing were disqualified to vote, thus causing a less than majority vote to proceed by formal complaint; and that the court erred in not dismissing the case or directing the verdict for appellant when appellant pleaded under oath that there was no majority vote by the Grievance Committee to institute a formal complaint, and appellee rested its case without controverting appellant's sworn allegation.

■ Appellant argues that the trial court was without jurisdiction because less than a majority of the Grievance Committee was present when a vote was taken to file a formal complaint against appellant. The record reflects that the Grievance Committee had twelve members, and at a meeting on September 7, 1972, there were eight members present. No decision was made or action taken at that meeting. Thereafter, on January 18, 1973, there were ten members of the committee present at the meeting, and the minutes of that meeting read:

> "*CHARLES BEN HOWELL*—The committee voted a six-month's suspension in connection with Mr. Howell's contempt of court matter. Only the members present at the time of the hearing voted on this. Larry Beason did not vote. Mr. Burleson is to advise Mr. Howell of this decision. If he does not accept, the committee voted to proceed with filing suit for suspension or disbarment.

Of the ten members present on January 18, 1973, six of those were present at the meeting on September 7, 1972.

Article 12, sec. 5 of the State Bar Rules provides:

> ". . . A majority of the [grievance] committee shall constitute a quorum for all purposes."

The record shows that there were seven or more members present on September 7, 1972, and on January 18, 1973, and seven members constituted a quorum. A majority of the quorum was authorized to act. "Majority" means the greater number, or the number greater than half of any total. Black's Law Dictionary, Fourth Ed. Appellant argues that there had to be a majority of the members of the committee voting for the bringing of this suit before such action could be taken. We disagree. If a majority of the committee was present, which majority constituted a quorum, then a majority of the quorum could act. There being ten members present at the January 18,

1973, meeting, only six were required to vote for the filing of the present suit. When a majority constitutes a quorum of a deliberative body, it can take any action the body has power to transact. *Herring v. City of Mexia,* 290 S.W. 792 (Tex.Civ.App.—Waco 1926, writ ref'd). These points are overruled.

Judgment of the trial court is affirmed.