Joe A. GAMEZ, Appellant,

v.

The STATE BAR OF TEXAS, Appellee.

No. 04–88–00367–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 28, 1988.

Rehearing Denied Feb. 14, 1989.

Joe A. Gamez, San Antonio, for appellant.

Russell A. Friemel, Linda Acevedo, Steven D. Peterson, Office of General Counsel, Attorney General's Office, Austin, for appellee.

BUTTS, Justice.

This is an appeal from a disciplinary proceeding brought by appellant Joe A. Gamez, an attorney, against appellee, the State Bar of Texas. TEX.GOV'T CODE ANN., T.2, Subt. G. App. A, STATE BAR RULES, arts. I–XII (Vernon 1988); *see specifically* art. X. Trial by jury was had on charges of professional misconduct stemming from representation by Gamez of clients in four separate matters, however, the jury answered favorably to Gamez in one case. The three before this Court are: (1) the divorce of Lillian Farris (formerly Lillian De La Guerra), (2) the divorce of David Reece Brewton, Jr., (3) the bankrupt-

cy of El Azteca Mexican Food Restaurant, Inc. Based upon the jury's verdict, the trial court found that the acts and conduct of Gamez constituted eleven separate violations of Disciplinary Rules. SUPREME COURT OF TEXAS, STATE BAR RULES, art. X, § 9 (Code of Professional Responsibility) (1988). One of these violations was found in the Farris matter, three in the Brewton matter, and seven in the El Azteca matter. The trial court found the proper discipline for the occurrences of professional misconduct to be suspension for one year from the practice of law, but that a portion of the suspension be probated (with conditions). Appellant brings four points of error.

## THE FARRIS DIVORCE

The husband, Karl L. De La Guerra, was petitioner in a divorce action against Lillian, his wife. She was first represented by an attorney who withdrew; then she employed appellant, Joe A. Gamez, attorney, to represent her in the contested action. Tanya McNaughton, attorney, represented the husband. The parties and attorneys conferred at the courthouse on April 1, 1981, reaching an agreement. The agreement was filed in the record to preserve its terms. McNaughton prepared the divorce judgment, and she and her client, the husband petitioner, signed the agreed judgment. McNaughton delivered the judgment to Gamez' office; Lillian signed it that afternoon, making several copies at that time. Gamez' secretary, who is his wife, took the document home that evening and Gamez signed it. The secretary delivered it to McNaughton's office the next day, according to her testimony.

McNaughton testified that she never saw the divorce judgment. She stated that a secretary at her office may have seen it. She stated that shortly after the Farris divorce she closed her law office and took an extended trip to Europe and the Middle East. She never followed up on the divorce decree to see whether it was filed.

She stated it was her understanding that Gamez was to enter the divorce judgment.

About two years later Lillian (now remarried) requested a certified copy of the judgment from the district clerk and discovered it had never been signed by the judge and entered of record. She notified the office of Gamez.

From his copy of the earlier judgment in his file, Gamez drew up a new, but identical, judgment. He approved it, and a lawyer associated with McNaughton (who was on vacation) approved it for her. The trial judge signed it and it was filed of record on August 12, 1983. Farris brought the grievance.

Three questions were answered by the jury regarding the Farris grievance in the trial de novo. The jury failed to find that Gamez willfully or intentionally neglected the legal matter that was entrusted to him. The jury failed to find that Gamez intentionally failed to seek the lawful objectives of his client, or to carry out the contract of employment entered into for professional services, or that Gamez prejudiced or damaged Farris during the course of the professional relationship without good cause. In the only other question, Question 1(A), submitted to the jury on the Farris divorce action, it found that Gamez engaged in conduct that was prejudicial to the Courts, to the State Bar of Texas or the complainant.

Since the jury found specifically in another question there was no prejudice to Farris, the State Bar must show the prejudice to be to the Courts or the State Bar of Texas. The judgment in this disciplinary proceeding indicates that the finding reflects a violation of Disciplinary Rule 1-102(A)(5): "A lawyer shall not ... engage in conduct that is prejudicial to the administration of justice." [1]

The first point of error is that the evidence is both legally and factually insufficient to support the jury's verdict in the Farris matter. [2] In deciding a "no evi-

---

1. CODE OF PROFESSIONAL RESPONSIBILITY, art. X, § 9 DR 1-102(A)(5).

2. To bring separate points of error as to legally and factually insufficient evidence is better

dence" point the reviewing court will view the evidence in the most favorable light in support of the verdict, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary to the verdict. The point of error must be sustained if there is a complete absence of, or no more than a scintilla of, evidence to support the verdict. *Freeman v. Texas Compensation Insurance Co.*, 603 S.W.2d 186, 191 (Tex. 1980). We sustain the "no evidence" point.

■ This court is required to determine the "no evidence" point first, and if that point is sustained, the disposition of the case must reflect that decision even though a factually insufficient point is also sustained. *See* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960).

In reviewing factually insufficient evidence points, we examine all the evidence to determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). This point is also sustained.

We agree with appellant that it is the usual custom for the petitioner's attorney, under the circumstances presented in this divorce case, to assume the responsibility of obtaining the trial judge's signature and filing the agreed judgment. It is not ordinarily an affirmative duty imposed on the attorney for respondent. However, as soon as Gamez learned of the omission, an affirmative *duty* arose to cause the judgment to be filed. He did immediately cause the judgment to be entered. *Compare State Bar v. O'Dowd*, 553 S.W.2d 822, 824 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.) (determining that a lawyer's failure to appear at a contempt hearing after a continuance had earlier been obtained, was not such professional misconduct as to be prejudicial to the administration of justice). We cannot say it has been shown that the failure of Gamez to act until after he learned that the judgment had not been signed and entered was such

practice. The predicates at trial, and arguments

professional misconduct as to be prejudicial to the administration of justice. *Compare Howell v. State*, 559 S.W.2d 432 (Tex.Civ. App.—Tyler 1977, writ ref'd n.r.e.). We find that the evidence is legally and factually insufficient to support the answer to Question 1(A). Accordingly, the trial court's finding as a matter of law that DR-1-102(A)(5) had been violated cannot stand. That portion of the judgment will be reformed to delete that finding.

## THE BREWTON DIVORCE

In his second point of error Gamez maintains the evidence to support the verdict on the Brewton divorce is legally and factually insufficient.

Brewton employed Gamez as his attorney to file a divorce action against his wife, who employed Jerry P. Heltzel as her attorney. The divorce was heard in August 1980. In evidence is a copy of a letter sent to Brewton on December 31, 1980. It recites that "[e]nclosed herein please find a copy of your divorce decree in reference to the above captioned cause." The copy of the decree is a conformed one reflecting that attorneys for both parties signed it, as well as the judge, and further, that it was signed and entered on August 12, 1980.

In evidence there is also a copy of the actual divorce decree that was signed by the judge and entered of record, shown by volume and page numbers of the records. This states that the divorce was heard on August 22, 1980, but was not signed and entered of record until December 21, 1980. The actual signatures of both attorneys appear on the approval lines, as well as the actual signature of the judge. The judgments differ in the following respects:

The two judgments showed different dates of hearing and different dates of the judge's signature. Child support is to be paid to mother of children directly in the non-official judgment, whereas it is to be paid through the child support office in the official one. The judgments showed different dates for when child support began. The major difference is the court order in

and authorities on appeal are different.

the actual judgment that the right to claim income tax exemptions upon the children of the marriage is granted to the respondent (wife) as part of the child support award.

The attorney for the wife testified that she telephoned him regarding entry of the judgment. He checked the court records and determined no judgment was on file, although a divorce had been granted. The attorney said he contacted Gamez and then discussed the issue of tax exemption for the wife since the child support payments were very low, and they agreed to the terms. Brewton never received a copy of the real divorce decree. When Brewton discovered the tax exemption provision in 1983, he filed a grievance against Gamez.

In answer to Question Number 1, the jury failed to find that Gamez engaged in conduct that was prejudicial to the Courts, to the State Bar of Texas or Brewton. The jury did find in answer to Question Number 3, that Gamez intentionally failed to seek the lawful objectives of Brewton, to carry out a contract of employment with Brewton for professional services, or that Gamez prejudiced or damaged Brewton during the course of the professional relationship without good cause. In answer to Question Number 4, the jury found that Gamez engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. The jury further found (Question Number 5) that Gamez engaged in conduct that adversely reflects on his fitness to practice law in his representation of Brewton. Based upon the jury's verdict, the trial court concluded that three violations of the

Disciplinary Rules occurred: DR 7–101(A), DR1–102(A)(4), and DR 1–102(A)(6).[3]

The State Bar is correct in its statement that the issue is not whether Brewton was eligible for a tax exemption but rather whether Gamez misrepresented to Brewton what was actually filed in his divorce case and whether Gamez agreed to the judgment terms without obtaining his client's consent and without his knowledge. Brewton testified he had one consultation with Gamez before obtaining the divorce and that the instrument sent him was consistent with what he understood the terms to be. The jury, faced with conflicting testimony, could have determined that the act of sending the non-official judgment, which reflected what Brewton discussed with Gamez, constituted misrepresentation. The jury could have found that the "conformed" signatures on the unofficial judgment were fraudulent. Moreover, since the tax matter was not discussed nor agreed to by Brewton, and Gamez did not obtain Brewton's approval of the tax exemption order, the jury could have determined there was an intentional failure to seek the lawful objectives of his client, and that Gamez's acts damaged his client. From the evidence presented, Gamez's actions could be found· by the jury to have adversely reflected on his fitness to practice law in his representation of Brewton.

Applying the established standards of review, *supra*, we hold that the evidence is both legally and factually sufficient to support the jury's answers in the Brewton grievance. Therefore, the trial court could

---

3. DR 7–101 Representing a Client Zealously.
    (A) A lawyer shall not intentionally:
    (1) Fail to seek the lawful objectives of his client through available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
    (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.
    (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).
    \*   \*   \*   \*   \*   \*
DR 1–102 Misconduct.
    (A) A lawyer shall not:
    \*   \*   \*   \*   \*   \*
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
    \*   \*   \*   \*   \*   \*
    (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

properly find as a matter of law that violations of DR 1–102(A)(4), DR 1–102(A)(6), and DR 7–101(A) occurred. The second point of error is overruled.

### THE EL AZTECA BANKRUPTCY

In his third point of error appellant avers he was not given notice of the grievance hearing on the Azteca bankruptcy complaint and was thereby denied due process of law. Article 10, § 10(C) of the State Bar Rules provides in part:

> Investigation. Where a matter has not been rejected after initial evaluation and the grievance committee has not determined otherwise, counsel shall proceed to conduct an investigation. *The respondent shall then be advised promptly that he is the subject of an investigation, be provided a copy of the allegations against him, and be asked to respond in writing with a copy to the complainant.* ... Where the grievance committee classifies the matter as a complaint the matter shall then be pursued to disposition ... (emphasis added)

> \*     \*     \*     \*     \*     \*

SUPREME COURT OF TEXAS, STATE BAR RULES, art. X § 10(C) (1988).

The record reflects that Gamez was notified by certified mail, the letter dated October 15, 1985, that a complaint had been filed against him, and a copy of the complaint was attached. This was the Azteca bankruptcy grievance. In evidence is Gamez's written response to the notification. The response is dated December 13, 1985. In addition there appears a letter from the attorney for Gamez, dated March 14, 1986, which indicates a second letter of notice was sent to Gamez. A copy of the same response previously sent to the grievance committee was again forwarded by Gamez.

The record reflects further that a hearing on the Azteca matter was conducted on September 10, 1986. At the instant trial Gamez testified he was present at that hearing. He also said he understood the grievance had been "dropped" after that time. There is no evidence to show the basis for the statement.

The evidence shows that the Farris and Brewton grievances, along with a third one, were the basis for a proposed agreed suspension order submitted to Gamez in July, 1985. It was not accepted.

■ Article 10, § 10(E) provides in part: Investigatory Hearing. The chairman of the grievance committee, with or without the request of counsel, *may* order that an investigatory hearing be conducted by the committee but shall order an investigatory hearing at the request of the respondent. The hearing shall be held not sooner than twenty-five (25) days after notice of hearing to counsel and respondent except by their agreement ... (emphasis added)

\*     \*     \*     \*     \*     \*

We find that the record, including exhibits admitted at trial and the testimony of Gamez and other witnesses, clearly shows that notice of the Azteca grievance and the hearing was given appellant. The record shows further that Gamez responded in writing and appeared at the hearing. After the initial hearing in September 1986, a subpoena *duces tecum* was issued to Gamez by mailing it to his regular business address. The accompanying certificate states that the subpoena was sent by certified mail; Gamez denied that he received it. Neither he nor his attorney appeared at that October 8th hearing which was before the full committee. Nor was he notified of any grievance committee recommendation.

Before that date the State Bar had filed suit based on the three previous grievances on April 23, 1986. The second amended original petition was filed on March 30, 1988, and it included the Azteca bankruptcy grievance.

We first note the subpoena was to compel production of certain documents by the witness relevant to the Azteca bankruptcy grievance; it was a subpoena *duces tecum,* and was not for the purpose of notice to the appellant of the nature of the grievance against him; that notice had previously been given. Section 14 of article 10 requires the grievance committee to determine appropriate sanctions *or take appropriate action after reasonable notice to*

*the respondent, after giving him an opportunity to respond and conducting a hearing.* SUPREME COURT OF TEXAS, STATE BAR RULES, art. X § 14(A) (1988). That due process requirement was complied with in the present case.

■ Section 14(B) of article 10 specifies that the committee shall prepare, if it has reason to believe that the respondent will accept its action as final, a form of judgment of sanctions it deems proper (not to exceed revocation or suspension of license for a period of more than three years) and submit the proposed judgment to the respondent. *Id.* § 14(B). The rules do not require this action. The committee had done this relative to the previous grievances. Since the committee already had reason to believe any proposal submitted would not be accepted (as with the earlier proposed judgment of sanctions), and since the State Bar had already initiated its suit for disciplinary action, it could properly amend its petition to include the Azteca matter. Under the circumstances of this case, this would be "appropriate action" and disposition of the matter. *Id.* § 14(A).

We hold that Gamez had notice that the Azteca grievance had been filed and of the Azteca grievance hearing, and that he was not denied due process for lack of notice. The fact that a subpoena *duces tecum* issued but that Gamez did not appear with the items requested does not vitiate the initial compliance with the notice requirement of the rules.

Within the same point of error Gamez presents another argument. It is that the State Bar failed to comply with the four year statute of limitations period prescribed by article 10, § 16(J), which provides:

Four Year Limitation Rule and Exceptions. No member shall be reprimanded, suspended, or disbarred *for misconduct occurring more than four (4) years prior to the time such allegation is brought to the attention of counsel* except in cases in which disbarment or suspension is compulsory as provided herein. Limitations, however, will not run where fraud or concealment is involved until such misconduct is discovered or should have been discovered by reasonable diligence by counsel. (emphasis added)

Appellant maintains that neither member of the grievance committee testifying in answer to his questions about the subpoena *duces tecum* could state with certainty if or when Gamez received the subpoena *duces tecum*. Gamez denied he received the subpoena, arguing he therefore did not receive notice as required. Gamez therefore contends the four year statute of limitations applies to bar the action since the State Bar failed in its proof to show when he received notice of the October 8th hearing.

■ This argument overlooks the actual notice of the grievance which Gamez received on October 23, 1985, according to the record. This was in the form of a letter of notice, dated October 15, 1985, with a copy of the grievance attached. Gamez responded to the grievance complaint and then appeared at a hearing in September, 1986. This fulfills the notice requirement to which State Bar Rules article 10, §§ 10(C) and (E) speak. Moreover, appellant misconstrues the function of the subpoena rule, art. 10, § 12. The subpoenas which can issue for discovery purposes are directed to *witnesses;* they do not serve as notice of the grievance to the subject member.

■ The petition in bankruptcy under chapter 11 relative to Azteca was filed in federal court on February 23, 1984. All matters involved in the Azteca grievance arose in 1984 and 1985. The October 15, 1985 notice to Gamez had attached to it a copy of the grievance. It is clear that the alleged misconduct did not occur more than four years before the allegation was brought to the attention of *grievance committee counsel.* It is that *counsel* who must have knowledge of the complaint within four years after the occurrence—not the attorney who is the subject of the grievance. *See Wilson v. State,* 582 S.W. 2d 484, 487 (Tex.Civ.App.—Beaumont 1979, no writ). Point of error three is overruled.

Appellant, in point of error four, asserts that the evidence is legally and factually insufficient to support the jury findings regarding the Azteca bankruptcy case on four questions.

The jury affirmatively answered Question Number 1(B) that Gamez did engage in conduct that was prejudicial to the Courts, to the State Bar of Texas or to Azteca in his handling of the bankruptcy case. The jury affirmatively answered Question Number 2(B) that Gamez did willfully or intentionally neglect the legal matter that was entrusted to him in the Azteca bankruptcy. To Question Number 5(C) the jury answered that Gamez engaged in conduct that adversely reflects on his fitness to practice law in his representation of the Azteca bankruptcy. Question Number 7 contained five subdivisions. The jury answered that Gamez violated a disciplinary rule of the State Bar; that he handled a legal matter without preparation adequate in the circumstances; that he counseled or assisted his client in conduct that the lawyer knew to be illegal or fraudulent; and that he knowingly engaged in other illegal conduct or conduct contrary to a disciplinary rule. These were Question Numbers 7(A)(C)(D) and (E).

We agree with appellant's contention that the jury incorrectly passed upon questions of law in subdivisions (A) that Gamez violated a disciplinary rule, and (E) that he knowingly engaged in ... conduct contrary to a disciplinary rule. The trial court should not have submitted those two questions as matters of fact for the jury to determine. They are matters of law to be determined by the court. *See Howell v. State*, 559 S.W.2d 432, 434–35 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r. e.). The trial court could have disregarded any issue that constituted a question of law. *Id.* However, there was no objection to the submission of the questions or motion to disregard, and in view of our disposition of the case, the error is harmless.

It was shown that after the bankruptcy petition was filed, Gamez made two substantial payments to creditors; the payments were made from the debtor's estate without authorization of the court. Appellant argues that the order defining his duties was not entered until two days after the payments were made. This does not address the presumption that the attorney in a bankruptcy matter is competent in that law and knows what his duties are according to the bankruptcy laws. The owner of Azteca testified that the funds turned over to Gamez were corporation funds from a sale, not personal ones; however, he was told by Gamez that they could make the payments to debtors at that time. It could be concluded that by disbursing the funds, Gamez prevented the creditors from knowing about the funds and caused an unfair distribution contrary to bankruptcy laws. Evidence disclosed it was necessary that another lawyer be substituted for Gamez and he attempted to recover the funds wrongfully paid out. Instead of advising his client what his rights, duties, and responsibilities were, Gamez rendered advice and took action that was contrary to bankruptcy laws and without the court's authorization.

The evidence also shows that Gamez failed to file an accounting on the Azteca bankruptcy case as required. An extension of time to file the accounting was granted by the court, but it was the lawyer who replaced Gamez who finally filed the accounting.

Another grievance complaint is that Gamez failed to provide counsel for the unsecured creditors committee with notice of his fee application. When that attorney obtained a copy of the fee application, he opposed the claim. Applying the standard of review set out earlier, we find there was both legally and factually sufficient evidence to support the jury's answers to the fact questions. The fourth point is overruled.

Because we sustained the point of error as to the Farris complaint, we must determine the disposition of the appeal accordingly. The trial court, in its broad discretion, set punishment at one year's suspension, with periods of probation, to include all three cases. We have no way of knowing the weight to be given the find-

ings in each case. In reviewing the evidence upon which the court based its punishment, we find that the imposition by the trial court of a one year suspension from the practice of law, with probated periods, on these two cases (Brewton and Azteca) would not be an abuse of discretion.

The judgment is reversed and rendered as to the Farris divorce case. Accordingly the finding by the trial court in the Farris divorce case that appellant violated DR–1–102(A)(5) is deleted. As reformed, the judgment is affirmed.

REEVES, Justice, concurring.

I concur in the result. However, I do not agree that the failure of Gamez to follow up on the entry of the divorce decree in the Farris divorce was not prejudicial to the Courts or the State Bar of Texas. Because it is custom in Bexar County for the prevailing party to enter the judgment does not relieve opposing counsel from the responsibility of verifying the entry of the judgment. It is also common practice among the attorneys of this Bar to require the attorney entering the judgment to advise the other attorney the date of entry of the judgment, thereby assuring the entry of a final judgment before closing the file. The proof of that statement is the consequences that occurred in this case. Mrs. Farris, relying on her attorney that the divorce was finalized, remarried. Two years later, to her dismay, she finds there is no written documentation of her divorce. There is, in my opinion, sufficient evidence to find Gamez's conduct prejudicial to the administration of justice.

CADENA, Chief Justice, dissenting.

If, as Justice Butts holds, there is evidence to support the finding of improper conduct by appellant in only two of the three cases relied on by the State Bar, I see no basis for affirming a judgment which imposes sanctions based on the premise that the State Bar proved all of the violations assessed in its pleadings. It may be conceded that a trial judge has a wide discretion in determining the sanctions to be imposed on an attorney who has violated the disciplinary rules and that, in the exer-

cise of such discretion, the court may assess one punishment for the violation of several rules or a separate sanction for the violation of each rule. *State v. Baker*, 539 S.W.2d 367, 375 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). Nor would I challenge the view that the trial court, "in good faith and using its best considered judgment, fit the punishment to the offenses before it ..." *State v. Baker*, 559 S.W.2d 145, 147 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). But in this case the trial court fixed the punishment to fit what it mistakenly believed were three offenses when, in fact, the evidence showed only two violations. I have difficulty characterizing as "sound" an exercise of discretion based on facts which do not exist. I cannot accept the notion that the trial court is vested with a discretion so broad that it can impose sanctions based on the commission of three violations when the record conclusively establishes that only two violations have occurred.

The first opinion in *State v. Baker, supra*, supports the conclusion that the judgment in this case should be reversed and the cause remanded to the trial court to consider, in its discretion, the sanctions to be imposed on appellant for two violations rather than three. In that case the Austin Court concluded that the trial court erroneously imposed sanctions in the belief that there were fewer violations than those found by the appellate court. The appellate court, while voicing the traditional statements concerning the trial court's discretion, remanded the case so that the sanctions imposed would correspond to the true facts. 539 S.W.2d at 375. *Cf. Ex parte Lee*, 704 S.W.2d 15, 17 (Tex.1986).